Annette J. McAllister

*vs.*

Dexter and Piscataquis Railroad Company.

Piscataquis.    Opinion February 1, 1910.

*Dower. Divorce. Action of Dower. Demand. Description. Detention. Damages. Statute 1895, chapter 157, sections 9, 11. Revised Statutes, 1883, chapter 51, section 16; chapter 60, section 9; chapter 103, sections 14, 19; 1903, chapter 105, sections 2, 3, 4.*

1.  A widow, in 1891, unless she had barred her right, was dowable in land, not taken by right of eminent domain, but purchased by a railroad company, during the coverture, from her husband, in a case where the land lay outside of the location of the railroad right of way, and was bought for and used as a gravel pit.

2.  A woman divorced from her husband in 1891 for his fault, other than impotence, was dowable in his lands, and in lands owned by him during coverture, but conveyed previous to the divorce, and in which she had not barred her dower right, the same as if she had then become his widow.

3.  Upon the granting of a divorce, in 1891, to a woman for the fault of her husband, other than impotence, her dower right became consummate. And even if it was not assigned, it became a vested property right of which she could not constitutionally be divested by a repeal of the statute which gave her that right.

4.  A consummate right of dower existing either in a widow, or a divorced wife, when the statute of 1895, chapter 157, enlarging the dower right to an estate in fee, was enacted, was not destroyed nor in any way affected by that statute.

5.  In an action of dower, non-tenure must be pleaded in abatement, and not in bar.

6.  In an action of dower, the want of a sufficient demand must be specially pleaded.

7.  When the tenant of the freehold is a corporation a demand for dower must be in writing. It is sufficient if such written demand of the dowress is signed in her name by her attorney.

8.  The description of the land in a written demand for dower may be in terms, or by reference to a recorded deed under which the tenant claims.

9.  A demand for dower in two parcels is not vitiated because the demandant is entitled to dower in only one of them, and sues for dower in that one only.

10.  If an attorney having authority to make demand for dower in one parcel, makes demand for two, the demand is not vitiated as to the authorized parcel.

11.  It is not necessary in a demand for dower that the demandant should state whether she claims dower in one-third of the premises or in one-half.

12.  The damages to which a dowress is entitled for the detention of dower from the time of demand to the commencement of suit is not measured by the use which the tenant made of the land, but by the profits which would reasonably have accrued from its use during the period.  It is not shown that the damages awarded by the jury in this case are clearly excessive.

On motion and exceptions by defendant.    Overruled.

Action of dower.    The declaration is as follows:

"In a plea of dower, wherein the plaintiff demands against the said defendant her dower of and in a certain lot or parcel of land situated in Dover in the County of Piscataquis and State of Maine, the same which was conveyed to said Dexter and Piscataquis Railroad Company by Frank B. McAllister of said Dover by his deed dated the fifteenth day of June, A. D. 1889, for a gravel pit for said Railroad Company, being the second parcel mentioned in said deed, and described as follows:    (Description omitted in this report.)

"Whereupon she complains and says that heretofore, to wit, on the twenty-third day of September, A. D. 1885, said Frank B. McAllister was intermarried with the plaintiff; and that said Frank B. McAllister was seized in fee of the said premises during his coverture with said plaintiff.    That at a term of the Supreme Judicial Court held at said Dover on the third Tuesday of September A. D. 1891, said plaintiff was granted a decree of divorce from said Frank B. McAllister from the bonds of matrimony for his fault, and that since said divorce was had, to wit, on the twentieth day of July, A. D. 1908, more than sixty days before the purchase of this writ, she demanded of the said defendant the Dexter and Piscataquis Railroad Company, then and ever since the tenant of the freehold of the said premises, in writing, by giving said written demand in hand unto L. P. Evans the Clerk of said Company, to assign and set out to her reasonable dower in said premises, which said defend-

ant refused to do, but has kept her out and still keeps her out of the same.

"The plaintiff also claims to recover in this suit reasonable damages for the detention of her dower, from the time of said demand to the time of the commencement of this action, which the plaintiff alleges amounts to one thousand dollars, all which is to the damage of the plaintiff as she says, the sum of ten thousand dollars.

"Yet though often requested, said defendant has not paid said sum nor any part thereof, but neglects and refuses so to do, to the damage of said plaintiff (as she says) the sum of ten thousand dollars, which shall then and there be made to appear, with other due damages.    And have you there this writ, with your doings therein."

Plea, the general issue as follows :   "And now comes the defendant and says that the demandant and the said Frank B. McAllister were never accoupled together in lawful matrimony, and this it is ready to verify."   The defendant also filed a brief statement denying that the plaintiff had any right to dower, or any right to have dower set out.   The plaintiff then filed a replication alleging that she was lawfully married to Frank B. McAllister and was afterwards divorced from him for his fault, and that she was entitled to have her dower in the premises described in the writ set out to her, etc.

Tried at the September term, 1909, Supreme Judicial Court, Piscataquis County.   After the evidence was all in the Justice presiding ruled pro forma, as a matter of law, that the plaintiff was entitled to dower in the premises described in the writ, and submitted the question of damages to the jury, to which ruling the defendant excepted.   The verdict was for the plaintiff for $100. The defendant also filed a general motion for a new trial.

The material facts are stated in the opinion.

*Bartlett Brooks*, for plaintiff.

*J. B. & F. C. Peaks,* for defendant.

SITTING :   WHITEHOUSE, SAVAGE, PEABODY, SPEAR, KING, JJ.

SAVAGE, J.   Action of dower.   The case comes up on exceptions to the ruling of the presiding Justice upon the undisputed evidence

that the plaintiff is entitled, as a matter of law, to dower in the premises described in her writ, and, upon the defendant's motion for a new trial. Since the same questions arise on the exceptions, except the amount of damages, as upon the motion, they may be considered together.

The plaintiff was married to Frank B. McAllister in September, 1885, and was divorced from him for his fault, other than impotence, in September, 1891. No children were born of this marriage, nor of any other, contracted by Mr. McAllister. During coverture, Frank B. McAllister was the owner of the premises described in the writ. In 1889 he conveyed to the defendant a strip of land four rods wide, which is now its right of way. By the same deed, but as a distinct parcel, he conveyed to the defendant, "for a gravel pit for said railroad," the lot of land in which the plaintiff now claims dower. The plaintiff has never released her right of dower in the premises, to the defendant. Upon these facts, the defendant contends, that the plaintiff has no dower, (1) because the land was purchased for, and devoted to, public uses, and (2) because the statute in force at the time she secured her divorce, by which she became entitled to dower, R. S., 1883, c. 60, sect. 9, was repealed by Stat. 1895, c. 157, sect. 11, by which the right of a divorced wife was enlarged from dower to one-third in fee, in common and undivided, of all his real estate. We think neither ground is tenable.

Revised Statutes, (1883) chap. 51, sect. 16, in force when the defendant took its deed, authorized railroad companies to "purchase or take and hold, as for public uses, land for borrow and gravel pits." In the case of a purchase, it took the land in fee; but in case of a statutory taking, it exercised the right of eminent domain, and held only an easement. Not only are the processes different, but some of the consequences are different. It is well settled that a widow is not dowable of lands taken by the right of eminent domain for public use. The reason is well stated in *French* v. *Lord*, 69 Maine, 537. "In such cases a division of the estate thus taken would destroy it for the use to which it has been appropriated. Private interests must give way to the public convenience and neces-

sity, rights in dower, as well as any other interest in real estate."
And there is authority to the effect that a widow is not dowable in
lands purchased by a railroad company, for public purposes, in
general. And all authorities agree that she has no right of dower
in lands so purchased for a right of way. And this obviously is on
the ground that public convenience and necessity require that the
railroad company should be in the exclusive and undivided posses-
sion, control and use of its right of way. In pursuance of its
public duties, it must occupy and use it. It cannot abandon it
without liability to forfeiture. It cannot even change it without
the permission of the State, granted through the railroad commis-
sioners.

But none of these considerations apply to a gravel pit. While it
may be purchased, as for a public use, the public use, so called,
affects the public only incidentally and indirectly. The company
need not use it all. It may abandon it. It may sell it, as a
private person would sell his property. It owes the public no duty
respecting it. While it is doubtless true that it is necessary, in the
present stage of railroad development, that a railroad company
should have gravel pits, it is not necessary, so far as the public is
concerned, that it should have any particular one. If it should
have to divide the pit, or contribute out of the rents and profits, it
would not in any sense interfere with the public convenience or
necessity. It would only affect the company pecuniarily in its
private capacity. Therefore, since the reason for the rule of the
exclusion of dower in lands devoted to public uses does not apply
to a gravel pit purchased by the railroad company, outside its right
of way, we hold that a widow, in 1891, was dowable of it, just as
she was in any other land purchased by the company, and not
devoted to technically public uses. For while it is true that all
the property of a public service corporation is in one sense devoted
to public uses, the use of a gravel pit is not of that kind of public
uses which should debar a widow from claiming her right of dower.

This view is supported by *Nye* v. *Taunton Branch R. R. Co.*,
113 Mass. 277. In that case the railroad company had purchased
land outside its location, for a freight station. The court held that

a widow who had not barred her interest was dowable of it.    And after stating the two methods by which the railroad company might, under the statutes of that State, as under our own, take the land, namely, by purchase and by the exercise of the right of eminent domain, the court said:—"By the first method the corporation obtains a fee in the soil; by the second the land is condemned to a servitude, and an easement is created in the corporation, which may be permanent in its nature and practically exclusive. *Hazen* v. *Boston & Maine Railroad*, 2 Gray, 574.    When it holds by the first, it derives its title solely from the deed; if the deed is without restriction, reservation or condition, the corporation may convey the land, if no longer necessary for its purposes; when it takes by the second, if the use is abandoned, the easement is extinguished, and the land reverts to the owner of the soil.    The one is simply an authority to buy and hold land for certain purposes, as a natural person may do; the other puts the land into the possession of the corporation by the exercise of the power of eminent domain.    The proceedings are entirely distinct, the rights acquired are different, and it does not change the character of the deed, because the land could have been taken against the will of the grantor.

But it is not necessary to consider that question here, or to decide what would have been the effect upon the demandant's right of dower, if the land had been taken, against the consent of the owner, on application to the county commissioners in the exercise of the power of eminent domain.    As the statute authorized the purchase for the purposes therein named, the land did not pass to the tenant under the exercise of the right of eminent domain accompanied by such powers and limitations as the exercise of that right imposes, but by deed subject to all incidents attending that form of contract between parties.

The land was at that time subject to the demandant's inchoate right of dower, which is now consummate by the death of her husband, and the purposes to which the corporation has in the meantime devoted the land are immaterial, as it may change them at will, and sell the land if it desires."    In this connection the vigorous dissent of the minority of the Supreme Court of Missouri, based

upon the Nye case, is of interest.  *Baker* v. *Railway Co.*, 122 Mo. at page 400.  See also *Venable* v. *Railway Co.*, 112 Mo. 103.

We have thus far treated the case as if the plaintiff became a widow in 1891.  But she did not.  She then became divorced for her husband's fault.  But her rights, such as they were in 1891, were the same as if her husband had then died.  The statute, R. S., 1883, c. 60, sect. 9, provided that "when a divorce is decreed to the wife for the fault of the husband for any other cause" than impotence "she shall have dower in his real estate, to be recovered and assigned to her as if he were dead."  And such a divorce affected the right of dower precisely as would the husband's death.  *Stilphen* v. *Houdlette*, 60 Maine, 447.  Therefore, at the outset, we have only to inquire what would have been a widow's rights under the same circumstances.  There is no controversy but that, if the husband had died in 1891, the plaintiff, as widow, would have been entitled to dower in all the dowable lands of which he had been seized during coverture, and of which she had not become barred.  Under the statute, her right as a divorced wife was the same.  *Lewis* v. *Meserve*, 61 Maine, 374.  There being no issue of this or of any previous marriage of McAllister, living in 1891, his divorced wife was dowable, as commonly expressed, in one-half of his real estate.  R. S., 1883, c. 103, sect. 14.

The defendant, however, contends that by the enactment of chapter 157 of the Laws of 1895 the dower provision for divorced wives was repealed.  That chapter enlarged the right' of widows in the real estate of their deceased husband from dower to an estate in fee.  *Golder* v. *Golder*, 95 Maine, 259.  It also provided in section 9, that when a divorce is decreed to the wife for the fault of the husband, for any other cause than impotency, "she shall be entitled to one-third in common and undivided of all his real estate, except wild lands, which shall descend to her as if he were dead."  The dower provision in the previously existing statutes, which has been referred to, was omitted.  And while the dower right of widows which had become consummate by the death of their husbands, but which had not been assigned, was expressly saved to them by the terms of the statute, it is claimed that there was no such saving pro-

vision for the rights of divorced wives. Hence it is contended that the plaintiff's right of dower which she had in consequence of her divorce was lost by reason of the statute of 1895.

We deem it unnecessary to inquire whether the statute of 1895, upon fair interpretation, is open to this construction, because we think the legislature could not constitutionally deprive the plaintiff of the right to dower which she then had. Prior to 1895, when dower, by that name, was abolished, a woman, if she had not barred it, had an inchoate right of dower in the lands of which her husband was seized during coverture; upon his death, or upon the granting of a divorce to her for his fault, and prior to assignment, that right became consummate, and her right to demand and enter upon the enjoyment of her dower interest commenced; after assignment, her estate was said to be assigned or vested, and she entered into the possession of it for the term of her life. 14 Cyc. 882. Since dower does not result from contract, but by operation of law, it is within the power of the legislature to increase, diminish, alter or abolish it, while the right thereto is merely inchoate, and has not become consummated by the death of the husband, or by divorce. *Barbour* v. *Barbour*, 46 Maine, 9; 8 Cyc. 909. While a widow's right to dower does not become vested or fixed until it becomes consummate, yet a consummate right of dower, though, before assignment, it is a mere right of action, *Johnson* v. *Shields*, 32 Maine, 424, is nevertheless a vested property right, under constitutional protection. She has no vested interest in any of her husband's real estate, but she has a vested right to have a share of it assigned to her for life. Mr. Scribner, in his work on Dower, says:—"There seems to be no conflict of authority upon the point that after it (dower) has become consummate, whether there has been an assignment or not, it is so far a vested right as to be beyond legislative control." 2 Scribner on Dower, c. II, sect. 3; 8 Cyc. 909, and cases cited.

It remains to consider some minor defenses. The defendant says that its deed from McAllister, which is a quitclaim deed in form, is merely a "release deed" and "that it does not claim, and never has claimed that it had any fee in the land described," but that the

deed was only a release of the land "for a gravel pit." This is equivalent to saying that the defendant is not tenant of the freehold. But this defense is not open under the pleadings. They are the general issue and a brief statement denying that the plaintiff has any right of dower, or any right to have dower set out. That is a plea in bar. But it is provided in R. S., c. 105, sect. 4, that the defendant, in an action for dower, "may plead in abatement, but not in bar, that he is not tenant of the freehold." *Lewis* v. *Meserve*, 61 Maine, 374. The defendant therefore must be deemed to be tenant of the freehold.

Next the defendant contends that the plaintiff's demand for dower was insufficient to maintain the action. It has been held that the want of a sufficient demand must be specially pleaded in bar. *Ayer* v. *Spring*, 10 Mass. 80. Under our practice it might have been pleaded by way of brief statement. But that was not done in this case. Nevertheless, since much stress is laid upon it, we will briefly consider the merits. The statute R. S., c. 105, sect. 2, requires a dowress, before bringing suit, to demand dower of the tenant of the freehold, and, by section 3, in case the tenant of the freehold is a corporation, she must demand her dower in writing. In this case a demand in writing was made. The first objection is that there was not a sufficient description of the premises in the writing. They were in fact described as "the premises described in a certain deed to you the said Dexter & Piscataquis Railroad Company from said Frank B. McAllister . . . . said deed being dated June fifteenth 1889 and recorded in the Registry of Deeds for said Piscataquis County in Volume 101 on page 265 of said Registry. A reference to this deed shows that two parcels were clearly and definitely described therein, one of which is the parcel involved in this suit. We think the description in the demand is sufficient. It was held in *Ford* v. *Erskine*, 45 Maine, 484, that the description may be in terms or by reference to a recorded deed under which the tenant claims. See also *Baker* v. *Baker*, 4 Greenl. 67; *Atwood* v. *Atwood*, 22 Pick. 283. Furthermore it is objected that the demand embraced two parcels, while the suit is to recover dower in one only. We see nothing in this objection. The defend-

ant is neither embarrassed nor injured because the plaintiff has abandoned her claim for dower in one of the parcels. Whatever her demand, she may recover according to her right, not exceeding the demand. A demand is not vitiated because the widow demands more than she is entitled to. *Hamblin* v. *Bank of Cumberland*, 19 Maine, 66; *Williams* v. *Williams*, 78 Maine, 82; *Davis* v. *Walker*, 42 N. H. 482; *Fulton* v. *Fulton*, 19 N. H. 169.

The demand in this case was signed in the name of the plaintiff by her attorney. The defendant contends that it should have been signed by her personally, or that if signed by an agent or attorney, he should have had written authority therefor. We do not think so. The statute does not require either. It has even been held, and we think properly, that oral authority given to an attorney by a dowress to bring action for the dower was sufficient authority to make a written demand which the statute made a prerequisite to bringing suit. *Stevens* v. *Reed*, 37 N. H. 51. This case is not like *Sloan* v. *Whitman*, 5 Cush. 532, cited by the defendant, where an attorney had written authority to demand dower "in any and all the before mentioned premises or any other," but no premises had been mentioned. Nor is there any reason for saying, as the defendant does, that if the attorney, having authority to make demand for one parcel only, made demand for two, the demand was vitiated as to the authorized parcel.

The defendant further contends that the demand should have stated whether the plaintiff claimed the use and income of one-third of the real estate, or one-half, the right depending upon whether issue was living in 1891, or not. But that was not necessary. *Davis* v. *Walker*, supra; 14 Cyc. 977.

Without further discussion, we conclude that there was no error in the ruling that the plaintiff is entitled to dower in the defendant's gravel pit. We conclude further that the plaintiff has taken all the necessary steps to enforce her right. This disposes of the exceptions, and of all the grounds of the motion for a new trial, except the claim that the damages awarded by the jury for the detention of dower were excessive.

Considering this last claim, we find that the period for which the plaintiff was entitled to recover damages was three months. R. S., 1883, c. 103, sect. 19. The jury awarded one hundred dollars. The plaintiff's right is not to be measured by what was actually taken from the gravel pit during the period, but by what might have been taken, under existing circumstances, including the prevalent demand for gravel, the state of the market, and like considerations. She was entitled to the use, and to the profits which reasonably would have accrued from the use, of one-half of the pit, during the period. Her damages arise, under the circumstances of this case, not from any use or want of use which the defendant made of the pit, but from the prevention of her right to use it, which was a valuable right. The rule was correctly stated by the presiding Justice in this case, when he instructed the jury to "ascertain how much revenue or profit, by reasonable industry, reasonable care, the owner of that property, if owned as a gravel pit, could have obtained from the sale of sand and gravel from that pit during that time," and when they had found that sum, to "divide it by two, because she is only entitled to one half." There was evidence that the jury might well believe that there was a good demand for gravel at Dover during the whole period, that a team hauling from 25 to 35 bushels at a load could make four or five trips a day, and that the price of gravel delivered ranged from 5 to 8 cents a bushel. It is evident that the jury, after allowing for the expense of hauling, estimated that the reasonable profit which might have obtained was about $2.50 a day. We cannot say that this estimate is clearly wrong.

*Motion and exceptions overruled.*