LINNA M. POULSON
*vs.*
JOHN H. POULSON

York. Opinion, January 14, 1950.

*Willard and Willard,* for petitioner.

*Harry S. Littlefield,*
*Simon Spill,* for respondent.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

WILLIAMSON, J.  The case arises on report in partition proceedings for determination of the interests of the parties in certain real estate.

The petitioner contends that the interests of the parties are equal; and the respondent, that his equal interest has become a two-thirds' interest by divorce for fault of the petitioner, formerly his wife.

The issue is: What interest, if any, does the husband, by divorce for fault of his wife, obtain in real estate held by husband and wife in joint tenancy?

R. S., Chap. 153, Sec. 64 (1944), under which the husband makes his claim, reads as follows:

"When a divorce is decreed to the husband for the fault of the wife, he shall be entitled to 1/3 in

> common and undivided of all her real estate, ex-
> cept wild lands, which shall descend to him as if
> she were dead; and the court may allow him so
> much of her personal estate as seems reasonable.
> In all cases the right, title, and interest of the
> libelee in the real estate of the libelant shall be
> barred by the decree."

The statute has remained without change since enacted in Laws of 1903, Chap. 209. Prior to the 1903 Act, the husband had a limited right in real estate of his wife upon divorce for her adultery. *R. S., 1883, Chap. 60, Sec. 10.*

Title to the real estate in joint tenancy was acquired by the parties, then husband and wife, by deeds in 1941 and 1945. The husband in 1948 obtained a divorce for fault of his wife. Nothing has taken place, apart from a conveyance of a portion of the real estate in 1946, which does not affect the present controversy, and the divorce, to change the title or interest of the parties.

In light of the agreed statement of facts, that the property was conveyed to the parties "as joint tenants and not as tenants in common," and that they "were seized in fee simple and as joint tenants with equal interest" in the real estate, we treat the estate held by them as a joint tenancy, with the usual incidents thereof, including the right of survivorship, within the protection of R. S., Chap. 154, Sec. 13, which reads as follows:

> "Conveyances not in mortgage, and devises of
> land to two or more persons, create estates in com-
> mon, unless otherwise expressed. Estates vested
> in survivors upon the principle of joint tenancy
> shall be so held."

The language in the 1941 and 1945 deeds, by which the joint tenancy in each instance was created, is not set forth in the record. Better practice calls for including the exact language, that the court may determine the true character of the estate from the deeds without the necessity of reliance upon the interpretation given to the deeds by the parties.

No question arises about the propriety of the partition proceedings. The interests of the parties are to be determined by the judgment for the partition. *R. S., Chap. 162, Sec. 1, et seq.*

It is unnecessary that we discuss at length the nature and incidents of joint tenancy or the effect of divorce in and of itself upon such a tenancy. Joint tenancy has been recently defined in *Burgess* v. *Strout*, 144 Me. 263; 68 A. (2nd) 241, 252 (1949), as follows:

> "A joint tenancy is a present estate in which both joint tenants are seized in the case of real estate, and possessed in the case of personal property per my and per tout. One of the characteristics of a joint tenancy is a right of survivorship between the joint tenants, if the joint tenancy is still in existence. The right of survivorship, however, does not pass anything from the deceased joint tenant to the surviving joint tenant. By the very nature of joint tenancy, the title of the first joint tenant who dies terminates with his death, and as both he and his cotenant were possessed and owners per tout, that is of the whole, the estate of the survivor continues as before."

See also 2 *Tiffany, Real Property*, 196, 198 (3d ed. 1939) ; *Garland, Appellant*, 126 Me. 84, 93; 136 A. 459, 464 (1927) ; 14 *Am. Jur.* 79; 48 *C. J. S.* 910, 927.

The joint tenancy was unaffected by the marital status of the tenants. Tenancy by entirety, consistent only with marriage, and terminating with the end of the marriage relation, does not exist in Maine.

Tenancy by entirety has not existed in Maine since the 1844 Act, entitled "An Act to Secure Married Women Their Rights in Property" *(Laws of 1844, Chap. 17)*, presently found in R. S., Chap. 153, Sec. 35, *et seq. Robinson, Appellant*, 88 Me. 17; 33 A. 652; 30 L. R. A. 331; 51 A. S. R. 367 (1895). In *Garland, Appellant, supra*, the court said on Page 93, "This Court does not recognize any joint interest

in either real or personal property, except that of copartners, tenants in common and joint tenancies."

From the time the property was here acquired until the moment of divorce the joint tenancy existed with all the usual incidents thereof. Either husband or wife could alienate his or her share in the joint tenancy, thus destroying the right of survivorship and creating a tenancy in common. Such severance could also be accomplished by forfeiture, or taking of the share of either tenant, by operation of law.

Divorce, in and of itself, does not affect the joint tenancy of husband and wife. The distinction between the effect of divorce upon a joint tenancy and an estate by entirety is set forth clearly in *Warren, Schouler Divorce Manual* (1944), on Page 270, as follows:

> "It seems to be the general rule that a joint tenancy is not affected by a divorce but remains in its original character. The law is thus different from that applied to tenants by the entirety. The reason for this is that while tenants by the entirety must necessarily be husband and wife, any two persons can be joint tenants. Their relationship, so far as the property is concerned is not changed by the divorce."

The rule is also stated that "Where husband and wife take as joint tenants and by virtue of the relation become tenants by the entirety, a divorce will restore the joint tenancy." 1 *Schouler, Marriage, Divorce, Separation and Domestic Relations,* 594 (6th ed. 1921).

The interest, therefore, if any, acquired upon divorce by the husband in the real estate held in joint tenancy, must arise by operation of *Section 64 of the statute, supra,* and is dependent upon the meaning of the words, "He shall be entitled to 1/3 in common and undivided of all her real estate, except wild lands (with which we are not concerned), which shall descend to him as if she were dead."

To arrive at the meaning of the statute, we must consider as well the statutory provision for the wife upon divorce for her husband's fault, and the Rules of Descent.

R. S., Chap. 153, Sec. 62, reads, in so far as it is here material:

> "When a divorce is decreed to the wife, for the fault of the husband for any other cause (except impotence), she shall be entitled to 1/3 in common and undivided of all his real estate, except wild lands, which shall descend to her as if he were dead; and the same right to a restoration of her real and personal estate, as in case of divorce for impotence."

Both Sections 64 and 62 use the terminology of the Rules of Descent in R. S., Chap. 156, Sec. 1, of which the pertinent part reads:

> "The real estate of a person deceased intestate— descends according to the following rules:
>
> "I. If he leaves a widow and issue, 1/3 to the widow. If no issue, $\frac{1}{2}$ to the widow. If no kindred, the whole to the widow; and to the widower shall descend the same shares in his wife's real estate. There shall likewise descend to the widow or widower the same share in all such real estate of which the deceased was seized during coverture, and which has not been barred or released as herein provided. In any event, 1/3 shall descend to the widow or widower free from payment of debts, except as provided in section 222 of chapter 150."

An amendment by Laws 1949, Chap. 439, effective since the divorce, and enlarging rights when no issue, has no bearing upon the principle here involved.

The law of divorce is wholly statutory. *Wilson, Pet.* v. *Wilson,* 140 Me. 250, 251; 36 A. (2nd) 774 (1944). We cannot travel beyond the purpose and intent of the statutes.

The relationship of husband and wife upon divorce, in so far as the source of the interest in real estate acquired

under Section 64 is concerned, is that of widower and deceased wife. The extent of such interest, however, is measured by Section 64, and is limited to a one-third share. The provisions of the Rules of Descent for differing interests dependent upon the existence or non-existence of issue or kindred are not applicable. Our court has set forth the nature of the interest acquired by a wife in real estate of her husband upon divorce for his fault in the cases mentioned below. The construction there given in cases of the innocent wife applies with equal force in the case of the innocent husband.

The court in *Leavitt* v. *Tasker,* 107 Me. 33; 76 A. 953 (1910), discussed the change from dower to an interest by descent upon divorce, and said at Page 37:

> "Taking all the provisions of chapter 157 of the Laws of 1895 together they disclose clearly, we think, a legislative intent to make the provision for a divorced wife in her husband's real estate, when the divorce is for his fault, similar to the provisions for a widow, so that she will be entitled to the same share in the same real estate, except wild lands, as she would be entitled to "if he were dead."

In *McAllister* v. *Railroad Company,* 106 Me. 371; 76 A. 891; 29 L. R. A., N. S. 726 (1910), the court, in passing upon dower of a wife upon divorce "to be recovered and assigned to her as if he were dead," by the effective statute, said at Page 377:

> "We have thus far treated the case as if the plaintiff became a widow in 1891. But she did not. She then became divorced for her husband's fault. But her rights, such as they were in 1891, were the same as if her husband had then died. - - - - - And such a divorce affected the right of dower precisely as would the husband's death. *Stilphen* v. *Houdlette,* 60 *Maine,* 447. Therefore, at the outset, we have only to inquire what would have been a widow's rights under the same circumstances."

In *Kelsea* v. *Cleaves*, 117 Me. 236; 103 A. 527 (1918), the court said at Page 237:

> "The act of 1895, in plain terms, abolished dower and in place thereof provides that upon the death of the husband one-third of his real estate descends to his widow, if there be issue, one-half to his widow if no issue and all if there be no kindred. Thus it will readily appear that it was the plain intention of the legislature, having abolished dower and provided for the descent of real estate to his widow at his decease, in lieu thereof, to guard the interests of the wife who obtained such a decree of divorce as we have referred to; by making provisions similar to those made for the widow in case of the husband's death. The two provisions are correlative."

The provisions for the innocent party on divorce are to be construed in connection with the Rules of Descent. Provision for the innocent wife by descent was created, as we have seen, in the 1895 Act which abolished dower, and in 1903 a like provision was made for the innocent husband.

The husband here is entitled only to such an interest as he would have obtained as a widower.

The question becomes: What interest in real estate held in joint tenancy by husband and wife passes by descent to the husband on death of the wife?

The surviving joint tenant holds the entire estate, not by acquisition of an interest from the deceased, but by right of the instrument creating the joint tenancy. The estate of the deceased joint tenant is extinguished, and he leaves no inheritable estate. *Strout* v. *Burgess, supra;* 48 *C. J. S.* 911; 14 *Am. Jur.* 80; 2 *Tiffany, supra,* 198.

There being no estate in the wife, who is as if she were dead for this particular purpose, to descend, it follows that there is no interest in the joint tenancy in the wife upon which Section 64 may operate. Thus the joint tenancy remains unchanged by the divorce and by Section 64.

If we treat the present right by descent as the equivalent of dower, the result is unchanged. At common law, dower does not attach to an estate in joint tenancy. The possibility of the estate being defeated by survivorship prevents dower. *Mayburry* v. *Brien,* 15 Pet. (U. S.) 21; 10 L. Ed. 646; 14 *Am. Jur.* 80. See Haskins, *"The Development of Common Law Dower,"* 62 Harvard L. Rev., 42, 49 (1948).

The Act of 1895 abolished both "her dower at common law" and the interest of the widower for life in real estate of his deceased wife "to be recovered and assigned in the manner and with the rights of dower." The common law rule of no dower was thus applicable to the rights of the widower. *Laws of 1895, Chap. 157; R. S., 1883, Chap. 103, Sec. 1*—dower for widow—words quoted unchanged since R. S., 1841, Chap. 95, Sec. 1; *R. S., 1883, Chap. 103, Sec. 14*—dower for widower—first enacted in Laws of 1857, Chap. 8.

To extend the operation of the statute, as urged by the husband, to accomplish a severance of the joint estate, with the creation of a tenancy in common, and the taking of a one-third interest in the wife's share held in common, would be to violate the plain meaning and intent of the statute. Such an estate, so obtained, would not be the interest to which a widower is entitled on decease of his wife, and such only, limited to a one-third share, is the interest a husband obtains on divorce.

It follows, as the judgment of the court, that the petitioner and the respondent are each entitled to a one-half interest in the real estate described in the petition.

*Judgment for partition accordingly.*