**Marjorie Jane YOUNG**

**v.**

**Nathan T. YOUNG.**

Supreme Judicial Court of Maine.

Dec. 5, 1974.

Bernstein, Shur Sawyer & Nelson by Sumner T. Bernstein, Eric F. Saunders, Portland, for plaintiff.

Skelton, Taintor & Abbott by Lendall L. Smith, Lewiston, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

On April 3, 1971 plaintiff, Marjorie J. Young, who had been previously married and divorced, married the defendant, Nathan T. Young. For approximately two months after they were married the parties lived in a house in South Portland which plaintiff owned by virtue of the property settlement made in her prior divorce. In May, 1971, plaintiff and defendant purchased another house in Cumberland for $24,500.00 and moved into it in early June of 1971. From funds each had acquired before the marriage defendant contributed $11,765.00 and plaintiff $500.00 toward the purchase price of the Cumberland real estate, with the balance coming from a loan, secured by a mortgage, from the Sun Fed-

eral Savings & Loan Association. The Association prepared the deed of transfer (as is usual when a lending institution participates in a closing), and a deed conveying to the Youngs "as joint tenants" was submitted to them.

Defendant balked at accepting this deed, and the closing was adjourned to allow the Youngs opportunity for further consideration of the problem. In the subsequent discussions between plaintiff and defendant, defendant took the position that "whatever he had bought he had always bought by himself", and plaintiff's view was that "in a . . . marriage, . . . it should be together, . . . we . . . should be as one"; and she further emphasized to defendant: "I would rather have it that way or I would rather stay in the home at Broadway." Ultimately, defendant agreed to accept the "joint-tenancy" deed, and the closing was completed.

In the house in South Portland was furniture owned by plaintiff which plaintiff brought with her when she moved into the Cumberland house. Other furniture for the Cumberland house was newly bought by the parties. Toward the purchase plaintiff paid $700.00 and defendant $530.00, each using funds acquired prior to the marriage, and an undetermined additional amount came from their joint checking account.

On September 11, 1972 plaintiff instituted the instant action for divorce against defendant in the Ninth District Court, Division of Southern Cumberland. Defendant filed an answer and counter-claim and removed the proceeding to the Superior Court (Cumberland County).[1]

On May 15, 1973 a Superior Court Justice held a hearing on the merits of the divorce, and on August 13, 1973 he received testimony as to the distribution of property. Adjudicating that a divorce be granted to plaintiff, the presiding Justice invoked the provisions of 19 M.R.S.A. § 722–

---

1. The removal was in accordance with Rule 73(b) D.C.C.R. as made applicable to divorce actions by Rule 80(k) of said rules.

A (hereinafter "Section 722–A"),[2] which had become effective on January 1, 1972, to conclude that the real estate in Cumberland and *all* the furnishings in it were the "marital property" of the parties. This "marital property" the Justice "divided" by: (1) awarding all of the household furniture and furnishings in the Cumberland house to the plaintiff, and (2) ordering the Cumberland real estate to

"be sold and the proceeds divided equally between the plaintiff and the defendant . . . said sale [to] take place as soon as a reasonable price can be secured . . . but in no event later than one year."

The presiding Justice made no award of alimony to plaintiff and required defendant to pay to the attorney for plaintiff the sum of $750.00 "as and for counsel fees."

Defendant has appealed, and plaintiff has cross-appealed, from the Superior Court judgment entered on the order of the presiding Justice.

We decide that the appeal of defendant must be sustained because the presiding Justice erred in his conclusions as to "marital property." Since reversal of the judgment in this respect has potential impact upon the right of the plaintiff to be awarded alimony, we sustain the cross-appeal of plaintiff.

### 1. The Appeal of Defendant

Defendant claims that there are two basic errors in the Superior Court judgment. First, defendant says that the presiding Justice violated Section 722–A in deciding that the Cumberland real estate and *all* the household furniture and furnishings in it were "marital property" notwithstanding that defendant had contributed from his own property acquired prior to the marriage $11,765.00 toward the purchase of the Cumberland real estate and $530.00 toward the price of the furniture bought during the marriage. Second, defendant makes a contention, not previously raised by him in this cause until he submitted his brief on appeal, that the presiding Justice either: (1) violated Article I, Section 6–A of the Constitution of Maine and the Fourteenth Amendment to the Constitution of the United States by ordering defendant as the "husband", and without taking into consideration plaintiff's ability to pay her attorney from her own resources, to pay the sum of $750.00, "as and for" the counsel fees of plaintiff's attorney; or (2) in all the circumstances was guilty of an abuse of discretion in making such order.

#### 1–a

■ As to whether the order for payment of counsel fees was a constitutional

---

2. As here relevant, 19 M.R.S.A. § 722–A provides:

"*1. Disposition.* In a proceeding: (a) for a divorce, (b) for legal separation, or (c) for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of said property, the court shall set apart to each spouse his property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors . . .

 * * * * *

"*2. Definition.* For purposes of this section only, 'marital property' means all property acquired by either spouse subsequent to the marriage except:

 * * * * *

"*B.* Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;

 * * * * *

"*3. Acquired subsequent to marriage.* All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2."

violation or an abuse of judicial discretion, since defendant failed to raise these issues before the presiding Justice and to take the other necessary steps which, as required by sound appellate practice, would properly preserve the questions for appellate review, defendant will not now be permitted a review of them for the first time at the appellate level. That, in one facet, defendant's attack on the propriety of the award of counsel fees purports to assume constitutional dimension does not require that the rules established for the maintenance of sound appellate practice be superseded. Younie v. State, Me., 281 A.2d 446 (1971); Reville v. Reville, Me., 289 A.2d 695 (1972).

The lawfulness of the order for counsel fees is not cognizable in this appeal and, hence, that part of the judgment of the Superior Court remains in full force and effect.

### 1–b

As to the Superior Court's adjudication concerning "marital property", defendant maintains that the presiding Justice contravened plain textual language of Section 722–A which, for present purposes, makes two facts, *without more*, determinative of whether or not property is "marital." These facts, says defendant, are: (1) such property as was acquired by either spouse after the marriage is, "presumably", "marital property" (Section 722–A, subds. 2 and 3) but (2) to the extent it has been "acquired in exchange for property [of either spouse] acquired prior to the marriage", the "presumption" is "overcome" (Section 722–A, subds. 2 and 3) and, as a matter of law, the property cannot be "marital property."

Defendant maintains that, here, the Cumberland real estate and the furnishings contained in it, albeit "presumably" "marital property" insofar as acquired subsequent to the marriage, cannot eventuate as "marital property" because the "presumption" has been "overcome" per se (no other considerations being material) as to the $11,- 765.00 worth of the real estate and the $530.00 worth of said furnishings "acquired in exchange for property acquired [by defendant] prior to the marriage."

While acknowledging that the textual language of Section 722–A "on its face . . . seemingly supports" defendant, plaintiff answers defendant's position with the contention that the surface absoluteness of the statute should be qualified by judicial interpretation to fulfill a "spirit" plaintiff purports to find, by analogy, in the law of "community property" as claimed by plaintiff to provide "the ancestral roots" of Section 722–A.

Thus, argues plaintiff, since Section 722–A states expressly that the concept of "marital property" has applicability "for purposes of this section only", that concept, and its legal consequences, are operative only in relation to judicial dispositions of property made incident to the dissolution of marriage or the adjudication of a legal separation. Plaintiff believes, therefore, that it is consistent with Section 722–A that the spouses be held free, by transactions with others, or themselves, during the course of the marriage, to affect (as if unmarried) the legal consequences of their ownership of property; and, hence, implicit in Section 722–A, by analogy to the principle of "transmutation" operative in "community property" systems, is the qualification that by an exercise of actual intention objectively manifested either spouse may "transmute" into "marital property" that which, in the absence of such exercise of intent to the contrary, Section 722–A would categorize as other than "marital property."

Since, here, the presiding Justice offered only an ultimate legal conclusion without supporting reasons or specific findings of fact, plaintiff contends that under Jacobs v. Boomer, Me., 267 A.2d 376 (1970) this Court is required to sustain the trial Justice's decision by resort to the legal rationale of "transmutation" as warranted by facts which the presiding Justice could properly have found on the present record.

We conclude that the appeal of defendant must be sustained notwithstanding plaintiff's argument predicated on an asserted "transmutation" and, indeed, without need that we here decide whether a principle of "transmutation", as borrowed from "community property" systems, shall be engrafted upon the "marital property" structure established by Section 722–A.

Hypothesizing, without deciding, that Section 722–A tolerates "transmutation", we turn to the crucial question of whether defendant had *in fact* objectively manifested *actual intention* to change the nature of the ownership consequences (as "non-marital") legally attaching in the absence of defendant's exercise of intent [3] into the ownership consequences otherwise legally characterized by Section 722–A as "marital."

■ Since "transmutation" is dependent upon an objectively manifested exercise of "intent", and since in the present context the legal structure establishing the critical distinction between "marital" and "non-marital" property had not yet come into existence at the time of defendant's alleged exercise of intent to "transmute" (Section 722–A becoming effective as law on January 1, 1972), there can be no rational possibility, here, that defendant had "transmuted." Because defendant accepted the "joint-tenancy" deed at a time when

the concept of "marital property", in its definition and effects, was foreign to the law of Maine, it was a concept incapable of being within the ken of defendant. Hence, consistently with a sound legal approach to "intention" as effective to override legal consequences otherwise imposed by statute, we cannot reasonably conclude that defendant's acceptance of a "joint-tenancy" deed in May of 1971 manifested an intention of defendant to establish a property ownership embodying legal consequences then unknown to Maine law and thus not within the cognizance, or anticipation, of defendant as possibly attendant upon his actions.

Even were we to accept plaintiff's claim, therefore, that implicitly incorporated into Section 722–A is the "commuunity property" doctrine of "transmutation", that principle, in light of the effective date of Section 722–A, cannot here furnish a basis upon which the judgment of the presiding Justice may be sustained. Since "transmutation" eventuates as irrelevant to the outcome of the case at bar, we have no occasion to decide whether it is implicit in Section 722–A.[4]

■ Plaintiff having failed to provide a sound legal theory to sustain the general conclusion of the presiding Justice that the Cumberland real estate was "marital property" under. Section 722–A and, as such,

---

3. The exact nature of the legal interest recognized by the law of Maine as of the time defendant accepted the joint tenancy deed was: (1) as stated in Greenberg v. Greenberg, 141 Me. 320, 43 A.2d 841 (1945): "[w]hile a resulting trust may arise, the presumption from the relationship of the parties is that the transfer was a gift to the wife . . . [such that] he gave her [a joint] half . . . [interest] in the propert[y] . . . " (pp. 323, 324, 43 A.2d p. 842) ; and (2) a divorce judgment *then* granted would be without legal effect to produce any change of the interests. Poulson v. Poulson, 145 Me. 15, 70 A.2d 868 (1950).

4. In the entirety of the above discussion we have proceeded on an assumption, apparently indulged by counsel for the defendant as well as the plaintiff, that the provisions of 19

M.R.S.A. § 722–A may *without constitutional difficulty* be *applied* to judicial proceedings for the dissolution of a marriage occurring *after* the effective date of the statute—notwithstanding that the legal nature of the property interest, as created *prior* to the enactment of the statute, becomes subject to change by the operation of the statute. It is not entirely clear that as *thus applied*, 19 M.R.S.A. § 722–A would have constitutional validity. See: Willcox v. Penn. Mutual Life Insurance Company, 357 Pa. 581, 55 A.2d 521 (1947). Cf. Ledoux v. Waterbury, La.App., 280 So.2d 871 (1973). Since, however, we have concluded that the appeal of defendant must be sustained on a ground independent of this constitutional question, our mention of it intimates no opinion as to how the question should be decided.

subject to disposition by the Court ". . . in such proportions as the court deems just . . .", the judgment of the Superior Court involved reversible error in this facet; and the appeal of defendant must, in this respect, be sustained.

Plaintiff seeks to support the presiding Justice's conclusion that all of the furniture situated in the Cumberland house was "marital property" notwithstanding that some of that furniture was purchased during the marriage in exchange, in part, for $530.00 as property acquired by defendant before the marriage. For this purpose plaintiff again resorts, analogically, to "community property" law and urges that we supplement Section 722–A with judicial recognition of the principle of "co-mingling" as operative in "community property" systems.

■ As we found with plaintiff's effort to utilize "transmutation", we conclude concerning plaintiff's resort to "co-mingling" that acceptance of it (to advance present argument) cannot benefit plaintiff. We, therefore, sustain defendant's appeal in this aspect without need to decide whether the "community property" law of "co-mingling" is appropriate for incorporation into the "marital property" structure of Section 722–A.

As recognized in "community property" law, "co-mingling" operates in conjunction with an additional principle by which the legal character of property as "separate" or "community" is deemed established "at the inception of title." Lawson v. Ridgeway, 72 Ariz. 253, 233 P.2d 459 (1951); Hollingsworth v. Hicks, 57 N.M. 336, 258 P.2d 724 (1953). Since at the time the parties purchased the furniture for the Cumberland house, the legal category of "marital property" was non-existent, it could not then, at the inception of title, have attached to the newly purchased furniture (or any other furniture). For this reason, there can be no legal foundation for a conclusion that, prior to January 1, 1972,

a merging of furniture had occurred which so intermixed furniture *then* having independent legal character as "non-marital" property with other furniture *then* independently bearing the legal impress of "marital property" that the "non-marital" furniture lost such independent identity by an amalgamation with "marital property" furniture.

■ Additionally, however, and on a further hypothesis, arguendo, that the concepts of "marital" and "non-marital" property could be thought legally applicable to the instant transactions between the spouses as and when they occurred, plaintiff gains nothing from her claim of "co-mingling." The record fails to justify a fact-finding conclusion of an essential element of "co-mingling" as recognized in "community property" law:—that all of the furniture in the Cumberland house had become so merged that it is now impossible to trace, and identify, that property which was, at the inception of title, "non-marital" rather than "marital" property. See: Thomasset v. Thomasset, 122 Cal.App.2d 116, 264 P.2d 626 (1954); Catron v. First National Bank & Trust Company of Tulsa, Okl., 434 P.2d 263 (1967).

At the inception of title there was, here, a group of furniture items capable of being treated as an entity:—those furnishings newly purchased for the Cumberland house. The record shows that this entity remained intact and identifiable as such in the Cumberland house. Although "presumed" "marital property" because ". . . acquired . . . subsequent to the marriage", the "presumption" is "overcome" as to $530.00 worth of this newly purchased furniture insofar as it was "acquired in exchange for property acquired [by defendant] prior to the marriage . . . ."

On the present record, then, the hypothesis of "co-mingling" fails as a legal theory by which the view of the presiding Justice may be upheld. Hence, without need to decide whether the "community property"

principle of "co-mingling" is operative within the "marital property" framework of Section 722–A, we conclude that the presiding Justice erred in his ruling concerning the furniture in the Cumberland house; and, in this respect, the appeal of defendant must be sustained.

### 2. The Cross-Appeal of Plaintiff

 The presiding Justice made no award of alimony to plaintiff. Were this judgment to remain unaffected by the present review, plaintiff would be conclusively foreclosed, in the absence of a subsequent change in the Maine statute relating to alimony, from raising the issue of alimoney in the future. Plummer v. Plummer, 137 Me. 39, 14 A.2d 705 (1940). Further, since the presiding Justice may have been induced to refrain from awarding alimony to plaintiff by his conclusions as to "marital property" and his disposition of it, our decision reversing the holding of the presiding Justice in these respects, and effective to require the presiding Justice to reconsider the distribution of property, changes the context in which the presiding Justice made his original decision to award no alimony· to plaintiff.

Anticipating this possibility and to protect her rights in light of it, plaintiff cross-appealed from the judgment of the presiding Justice. The eventuality plaintiff foresaw as possible has now materialized to her potential detriment. Accordingly, we sustain the cross-appeal of plaintiff to afford her adequate opportunity to claim alimony as an incident of the presiding Justice's reconsideration of the property aspects of the divorce.

The entry is:

Appeal of defendant sustained.

Cross-appeal of plaintiff sustained.

Remanded to the Superior Court for further proceedings in accordance with the opinion herein.

All Justices concurring.