## Constance E. BRYANT

v.

## Robert T. BRYANT.

Supreme Judicial Court of Maine.

Feb. 20, 1980.

Daniel G. Lilley (orally), E. Paul Eggert, Portland, for plaintiff.

Cloutier & Joyce by Edward S. David (orally), Edward H. Cloutier, Livermore Falls, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

McKUSICK, Chief Justice.

Defendant husband appeals from a judgment of divorce entered in the Superior Court, Androscoggin County. He asserts error in those portions of the judgment: (a) dividing the "marital property" acquired prior to 1972; (b) ordering him to pay alimony to the wife; and (c) ordering him to pay part of the wife's counsel fees. We sustain only the husband's contention concerning that portion of the alimony decree ordering him to maintain life and health insurance for the benefit of the wife. To that extent, but only to that extent, we vacate the decree, and remand the case to the Superior Court for further proceedings in regard to the insurance.

Aside from an order dissolving the bonds of matrimony, which is not challenged on

this appeal, the Superior Court's decree included the following specific provisions:

[I]t is ordered . . . that:

. . . . .

(2) The Livermore real estate [1] consisting of [the marital home] and the land on which it is situated, presently held in joint tenancy, be set apart as follows:

A tenancy in common is created with a four fifth (⅘) interest set apart to Constance Bryant and a one fifth (⅕) interest set apart to Robert Bryant, which tenancy in common is subjected to, and encumbered by, a life estate in Constance Bryant . . . .

. . . . .

(4) Mr. Bryant pay the sum of $85.00 per week to Mrs. Bryant as, and for, alimony. Mr. Bryant is further ordered to continue making monthly payments on the home . . . mortgage loan . . . .

(5) Mr. Bryant maintain term life insurance in the sum of $25,000 with Mrs. Bryant as the irrevocable beneficiary.

(6) Mr. Bryant . . . maintain Blue Cross/Blue Shield and major medical insurance for Mrs. Bryant on his policy coverage at his place of employment.

(7) Mr. Bryant be required to pay the sum of $1,000.00 toward all counsel fees in this case.

The husband appeals to this court, challenging all of the above-quoted portions of the judgment. The wife has filed no cross-appeal but moves in this court for the allowance of counsel fees on the appeal.

I. *The Property Division*

A. *Statutory Challenge*

The husband contends that the Superior Court had no jurisdiction to divide the marital property of the parties acquired prior to January 1, 1972, without a specific request in writing by both of them. He argues that the broad grant of power in

---

1. The couple's lakefront property in Livermore was acquired in 1956, subsequent to their marriage in 1950, a summer camp was built there in 1959 or 1960, and substantial improvements were made between 1972 and 1976. Thus, a portion of the value of the Livermore property was acquired prior to January 1, 1972. See part I(A) of this opinion.

subsection 1[2] of 19 M.R.S.A. § 722–A (Supp.1979) is limited by subsection 4 added by P.L.1977, ch. 226, § 2, effective October 24, 1977. That 1977 amendment provides:

> **4. Disposition of Marital Property.** If both parties to a divorce action also re- quest the court in writing to order dispo- sition of marital property acquired by either or both of the parties to the di- vorce prior to January 1, 1972, . . . the court shall also order such disposition . . . .

The inference the husband seeks to draw from that 1977 amendment is squarely re- futed by its legislative history. The state- ment of facts attached to the corresponding legislative document, L.D. 1762, clearly re- veals that subsection 4 was enacted solely for the purpose of meeting the possible constitutional problem adverted to in a footnote in *Young v. Young*, Me., 329 A.2d 386, 390 n. 4 (1974).[3] In actuality, after the 1977 legislature adjourned and before the 1977 amendment became effective on Octo- ber 24, 1977, the Law Court, in its opinion in *Fournier v. Fournier*, Me., 376 A.2d 100 (1977), considered the question raised in the *Young* footnote and decided that section 722–A could be applied to pre-1972 property without raising any constitutional difficul- ty. This holding of *Fournier* was reaf- firmed in *Stevens v. Stevens*, Me., 390 A.2d 1074 (1978). Although neither *Fournier* nor *Stevens* addresses the negative implication argument put forth here by defendant hus- band, those decisions conclusively establish that the sole purpose for enacting the 1977 amendment never in fact existed. Thus, the sentence quoted above is an unneces- sary grant of a limited power to the divorce court, which already is vested with the gen- eral power as well as duty to deal with all marital property, whenever acquired. The legislature demonstrated no intent to cut down the grant of authority to the divorce court; it was trying merely to protect as much as it could against any possible claim of constitutional invalidity.

### B. *Court's Exercise of Discretion*

The division of marital property is a matter committed to the sound discretion of the divorce court. *Zillert v. Zillert*, Me., 395 A.2d 1152 (1978); *Fournier v. Fournier, su- pra*. Although in many instances it is unde- sirable to require the former spouses to continue as co-owners of the marital estate, *Zillert v. Zillert, supra* at 1157, on these facts it was not an abuse of discretion for the court to create a tenancy in common, thus avoiding the significant hardship to the wife if the property were sold. *See Tibbetts v. Tibbetts*, Me., 406 A.2d 70, 77 n. 11 (1979). The proportionate shares of the tenancy awarded to the parties were well within the court's discretion.

## II. *The Alimony Award*

The husband alleges error in the decree on the ground that the Superior Court ex- ceeded its statutory authority by specifical- ly ordering him:

(a) to continue making monthly mort- gage payments on the Livermore proper- ty;

(b) to maintain $25,000 in term life insur- ance with plaintiff as the irrevocable ben- eficiary; and

(c) to obtain health insurance for plain- tiff "on his policy coverage at his place of employment."

A divorce court is vested with broad au- thority to order one spouse to pay the other

---

**2.** Subsection 1, which became effective on Jan- uary 1, 1972, provides in pertinent part:

> **1. Disposition.** In a proceeding . . . for a divorce, . . . the court . . . *shall divide* the marital property in such pro- portions as the court deems just . . . . (Emphasis added)

**3.** In dictum, the court had stated "[i]t is not entirely clear" that section 722–A "may *with- out constitutional difficulty* be *applied* to [di- vorce] proceedings . . . occurring *after* the effective date of the statute—notwithstand- ing that the legal nature of the property inter- est, as created *prior* to the enactment of the statute, become subject to change by operation of the statute." *Id.* (emphasis in original). The statement of facts erroneously concluded that the Law Court in *Young* had "decided" that retrospective application of the statute "vio- lates the constitutional prohibition of ex post facto lawmaking." L.D. 1762.

alimony or payments in lieu of alimony. The only express restrictions placed on that authority by the controlling section, 19 M.R.S.A. § 721 (Supp.1979),[4] are the requirements that such payments 1) be reasonable and 2) "have regard to [the payor] spouse's ability to pay." Although the contrast between the first and third sentences of section 721 suggests that the term "alimony" by itself refers only to payments at regular periodic intervals, the statutory authority to order payment of "a specific sum" "instead of alimony" "payable in such manner and at such times as the court may direct" evinces a legislative intent to give the divorce court broad options in selecting the appropriate method for paying what we will comprehensively call by the single name "alimony." Section 721 also emphasizes the breadth of the divorce court's power in fashioning its alimony decree by declaring:

This section shall not limit the court . . . from . . . conditioning the alimony award in any manner on terms that the court deems just.

We reject the notion that the term "alimony" excludes anything but direct payments to the payee spouse. Payments to a third party for the benefit of the other spouse, whether in the form of mortgage payments or health and life insurance, are the practical equivalent to both spouses of direct payments, but carry the added feature of assuring the court and the payor spouse that the money will in fact be applied to meet the payee's identified needs.

■ We similarly reject the notion that the term "alimony" excludes anything but periodic payments limited in amount to the current needs of the payee spouse. Although meeting such current needs is of course the most common and basic purpose of alimony, the statutory provision for the payment of a "specific sum" at times other than periodically demonstrates that the court's alimony order may require payments in anticipation of the payee spouse's needs. The maintenance of life insurance—which, in the event the payor spouse predeceases the payee, can take the place of periodic payments after the payor's death—is just such special payment arrangement as section 721 authorizes.

Although the Law Court. has never had occasion to address the issue raised by the husband, we find ample support in the case law of other jurisdictions for orders requiring a payor spouse: (1) to continue making mortgage payments, *Arakaki v. Arakaki*, 54 Haw. 60, 298, 502 P.2d 380 (1972); *Kinsey v. Kinsey*, 143 W.Va. 574, 103 S.E.2d 409 (1958); *Bowman v. Bowman*, 29 Cal.2d 808, 178 P.2d 751 (1947); (2) to provide health care insurance for the benefit of the payee spouse, *Brown v. Brown*, 335 Mich. 511, 56 N.W.2d 367 (1953); and (3) to maintain or provide life insurance with the payee spouse as the irrevocable beneficiary, *Wiltz v. John Hancock Mutual Life Ins. Co.*, 58 Mich.App. 604, 228 N.W.2d 484 (1975); *Williams v. Williams*, 44 Wis.2d 651, 171 N.W.2d 902 (1969); *Southard v. Southard*, 262 Mass. 278, 159 N.E. 512 (1928). As to the maintenance of life insurance, many jurisdictions refuse to recognize the authority to make such an order on the ground that the obli-

---

4. That section provides:

**§ 721. Alimony**

The court may decree to either spouse reasonable alimony out of the estate of the other spouse, having regard to that spouse's ability to pay and may order that spouse to pay sufficient money for the defense or prosecution of hearings regarding alimony. To effect the purposes of this section, the court may order so much of one spouse's real estate, or the rents or profits thereof, as is necessary to be assigned or set out [sic] the other spouse for life. The court may order instead of alimony, a specific sum to be paid or to be payable in such manner and at such times as the court may direct. The court may at any time alter, amend or suspend a decree for alimony or specific sum when it appears that justice requires it; except that a court may not increase the alimony if the original decree prohibits an increase. The court may use all necessary legal processes to carry its decrees into effect.

This section shall not limit the court, by full or partial agreement of the parties or otherwise, from awarding alimony for a limited period, from awarding alimony which may not be increased regardless of subsequent events or conditions, or otherwise limiting or conditioning the alimony award in any manner on terms that the court deems just.

gation to pay alimony ceases upon the death of the payor spouse. *E. g., Todd v. Todd,* 311 So.2d 769 (Fla.App.1975); *Menor v. Menor,* 154 Colo. 475, 391 P.2d 473 (1964). Our Maine statute, however, has been construed as authorizing alimony after the death of the payor spouse. *Stratton v. Stratton,* 77 Me. 373, 52 Am.Rep. 779 (1885). *See Miller v. Miller,* 64 Me. 484, 487 (1874).

Thus there is no rule of law that alimony payments may not include payments for mortgage interest and amortization, health and life insurance, and other benefits to the payee spouse purchased from a third party. Other than the limiting factor of the payor spouse's ability to pay, all the considerations that the divorce court must take into account in framing its alimony decree are encompassed in the statutory requirement that the ordered payments be "reasonable." Alimony must be reasonable both in amount and in the method of payment, giving regard to the situation, both at present and for the foreseeable future, of both spouses. *See Strater v. Strater,* 159 Me. 508, 517–18, 196 A.2d 94, 98–99 (1963). The relative health and age of the parties and the availability of other property to the payee spouse may, for example, be relevant considerations in deciding whether to require the maintenance of life insurance for the payee's benefit. The judgment as to what is reasonable "must be the result of the exercise of sound judicial discretion." *Capron v. Capron,* Me., 403 A.2d 1217, 1218 (1979). We have recently pointed out the great deference paid to the divorce court's determination:

> Unless the Law Court can determine that the court has violated some positive rule of law or has reached a result which is plainly and unmistakably an injustice that is "so apparent as to be instantly visible without argument," the ruling appealed from must be approved.

*Id.*

Turning to the divorce decree in the case at bar, and applying the *Capron* standard of review, we can find no abuse of discretion in ordering alimony except in regard to the provisions concerning health

and life insurance. The Superior Court justice did not have before him evidence of either the availability or cost of such insurance and so could not have given regard to the husband's ability to obtain and pay for it. *See Gardner v. Perry,* Me., 405 A.2d 721, 725–26 (1979). We accordingly must remand to the Superior Court for the limited purpose of permitting the same justice to receive evidence on those issues and then to make such order in regard to insurance as he deems just on the basis of the whole record. After receiving evidence of the cost of available insurance, the Superior Court justice must consider whether ordering the husband to maintain that insurance is reasonable, having regard to his ability to pay and to the alimony obligation that the husband bears under that part of the original decree that is herein affirmed.

### III. *Attorney's Fees*

#### A. *Constitutional Challenge*

The husband attacks that portion of the decree ordering him to pay $1,000 toward the wife's attorney's fees. He argues that 19 M.R.S.A. § 722 (Supp.1979) violates the equal protection clause of the fourteenth amendment in that only "the husband, ex-husband or father" may be committed to jail for contempt of court in failing to pay attorney's fees and that such unconstitutionality invalidates the entire body of statutory provisions authorizing the award of attorney's fees in divorce actions. *See* 19 M.R.S.A. §§ 693, 721–22. Since the husband has failed to show by the record brought here that he raised this issue before the Superior Court, he "will not now be permitted a review of [that issue] for the first time at the appellate level." *Young v. Young, supra* at 389.

#### B. *Court's Exercise of Discretion*

As in making a property division and in fixing alimony, the divorce court has wide discretion to allow attorney's fees to either party. *E. g., Strater v. Strater, supra.* The court's allowance of $1,000 was clearly within that discretion.

C. *Wife's Motion for Counsel Fees on Appeal*

The wife has moved in this court for allowance of her counsel fees on appeal. That is a motion that must be addressed to the Superior Court on remand. *See Wood v. Wood,* 407 A.2d 282, 288 (1979); *Gardner v. Perry, supra* at 726; *Strater v. Strater, supra,* 159 Me. at 520–22, 196 A.2d at 100–01; 19 M.R.S.A. §§ 693, 721 (Supp.1979).

The entry will be:

Appeal sustained in part and denied in part.

Paragraph (5) of the Superior Court judgment entered March 22, 1979, vacated. That portion of paragraph (6) of said judgment relating to the maintenance of "Blue Cross/Blue Shield and major medical insurance" vacated. In all other respects, said judgment is affirmed.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

Costs on appeal allowed to neither party.

POMEROY, J., sat at oral argument and participated at conference, but retired prior to preparation of the opinion herein.

ARCHIBALD, J., did not sit.