Wallace K. CARTER

v.

Eleanor Mary CARTER.

Supreme Judicial Court of Maine.

Argued May 1, 1980.

Decided Sept. 22, 1980.

---

Hale & Hamlin, Barry K. Mills (orally), Blue Hill, for plaintiff.

Silsby & Silsby, Anthony W. Beardsley (orally), William S. Silsby, Jr., Ellsworth, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

GLASSMAN, Justice.

The plaintiff, Wallace Carter, appeals from an order of the Superior Court, Hancock County, affirming the judgment of the District Court, Division of Central Hancock, as to the disposition of certain real estate referred to as the "Ponderosa." The plaintiff acquired the land before his marriage to the defendant, Eleanor Mary Carter, and conveyed it after the marriage by joint–tenancy warranty deed to himself and his wife. Disposition of the "Ponderosa" was made in connection with entry of a divorce judgment on the grounds of irreconcilable differences. The plaintiff contends on this appeal that the District Court incorrectly found the facts and applied the law in making a determination that the wife's interest in the joint–tenancy property conveyed to her by her husband was non–marital property to be "set over to her." We vacate the judgment.

The parties were married on October 9, 1971. This was the second marriage for both, and there are no children of this marriage. Neither spouse worked during the term of this marriage. Mr. Carter had savings and during the marriage drew substantial disability benefits connected with his former employment as a flight engineer and copilot.

The husband owned real estate in Deer Isle, Maine, including a home in which the couple resided during the entire term of the marriage. He had acquired the land several years prior to the marriage and had begun construction of the house in the spring of either 1970 or 1971. At the time of the marriage, the exterior of the house was completed and the interior was only partially completed. The interior of the house was finished during the marriage. The husband converted his interest in the house and some land to a joint tenancy with his wife by deed dated March 20, 1972. The District Court found the parties' respective undivided one–half interests in that property to be "non–marital" and "set them over" to the parties as such. Mr. Carter appealed that ruling and disposition to the Superior Court which affirmed the judgment and

remanded to the District Court. The husband then brought this appeal from the Superior Court judgment.

Relying on 19 M.R.S.A. § 722–A (Supp. 1979),[1] the Maine statute governing the disposition of property on divorce, the appellant–husband argues that the "Ponderosa" is his separate (non–marital) property. This is the proper classification, he contends, because the property was acquired before marriage. He argues that the transfer of the "Ponderosa" into joint tenancy should not be considered a gift because such a transfer is not clear and convincing evidence of donative intent but evidence only of an intent to avoid probate and inheritance taxes.

The appellee–wife's response is that the transfer into joint tenancy gave her a one-half interest in the "Ponderosa" as her separate property. This result is compelled, she argues, by operation of the common-law presumption of a gift set out in *Greenberg v. Greenberg*, 141 Me. 320, 323–24, 43 A.2d 841, 842 (1945), read in conjunction with the exception of subsection 2(A) of Section 722–A, making "[p]roperty acquired by gift, bequest, devise or descent" subsequent to marriage "non–marital."

Resolution of the question of the proper classification of the property in dispute requires us to examine our marital property statute, 19 M.R.S.A. § 722–A (Supp.1979). That statute is patterned after the original Section 307 of the Uniform Marriage and Divorce Act (Uniform Act) as promulgated in 1970.[2]

The provisions for division of property on marriage dissolution recommended in the Uniform Act were premised on the belief that the rules existing in common–law jurisdictions were inequitable. Under the common law, the spouse without title was not entitled to any of the property on divorce and was left with only the uncertain support of alimony. Such a distribution disregarded both the noneconomic contributions and the actual financial contributions of the parties to property acquired during marriage. *See Corder v. Corder*, 546 S.W.2d 798, 803 (Mo.App.1977); R. Levy, *Uniform Marriage and Divorce Legislation: A Preliminary Analysis* 164–67 (1968); Comment, *The Maine Marital Property Act: The Duties of Divorce Courts and the Right to an Equitable Share of Marital Assets*, 31 Me.L.Rev. 333, 337–38 (1980) (hereinafter cited as Comment, *Maine Marital Property*). To remedy this inequity, the Commissioners on Uniform State Laws developed

---

1. 19 M.R.S.A. § 722–A (Supp.1979) provides in pertinent part:

1. Disposition. In a proceeding: (a) for a divorce, ... the court shall set apart to each spouse his property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

. . . . .

2. Definition. For purposes of this section only, "marital property" means all property acquired by either spouse subsequent to the marriage except:

A. Property acquired by gift, bequest, devise or descent;
B. Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;
C. Property acquired by a spouse after a decree of legal separation;
D. Property excluded by valid agreement of the parties; and
E. The increase in value of property acquired prior to the marriage.

3. Acquired subsequent to marriage. All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co–ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2.

2. This original provision of the Uniform Act was withdrawn in 1973 and replaced with two alternative provisions. Alternative A eliminated the distinction between marital and nonmarital property, creating instead a "hotchpot" of all the assets of the spouses for distribution between them. Alternative B, retaining the two property classifications, was recommended for adoption only in community property states. Uniform Marriage and Divorce Act § 307, Commissioners' Comment (1973); 9A U.L.A. *Matr., Fam. & H. Laws* 144 (1979); *see Tibbetts v. Tibbetts*, Me., 406 A.2d 70, 75 n. 6 (1979).

the concept of "marital property," which was meant to correspond to "partnership property" in a business partnership or to "community property" in a community property state. *See Tibbetts v. Tibbetts,* Me., 406 A.2d 70, 76–77 (1979), and sources cited therein.

■ The law of divorce in Maine is purely statutory. *See Wood v. Wood,* Me., 407 A.2d 282, 285 (1979); *Poulson v. Poulson,* 145 Me. 15, 20, 70 A.2d 868, 871 (1950). Prior to the adoption of our marital property statute, distribution of property on divorce was based on fault. *See Poulson v. Poulson, supra,* 145 Me. at 20–22, 70 A.2d at 870–72; 19 M.R.S.A. § 721 (1954) (amended P.L.1971, ch. 399, § 1); 19 M.R.S.A. § 723 (1954) (repealed P.L. 1971, ch. 399, § 4). The legislature sought, by enactment of the marital property statute, to remedy the inequities of this system. *See* the remarks of Senator Harding, 105th Leg.Rec. 3410–11 (Senate, 1971), quoted in Comment, *Maine Marital Property, supra,* at 334 n. 8.

Under prior law, if a husband and wife held property as joint tenants, divorce had no effect upon their respective interests. *Poulson v. Poulson, supra,* 145 Me. at 22, 70 A.2d at 871–72. Such a rule was not generally deemed inequitable and, even if it might appear unfair in an individual case, it at least left the couple in a situation they had created by choice. *See* Krauskopf, *A Theory for "Just" Division of Marital Property in Missouri,* 41 Mo.L.Rev. 165, 168 (1976). That some couples chose to put property in joint tenancy even though one spouse had paid all of the purchase price from separate funds represented a recognition of the partnership nature of marriage by those couples before the law itself adopted that theory.

The problem of dealing with joint–tenancy property within the marital property context was confronted by the Missouri Court of Appeals in *Conrad v. Bowers,* 533 S.W.2d 614 (Mo.App.1975), in interpreting a statute identical in all relevant provisions to Maine's marital property statute. In rejecting the position espoused by the husband in the case at bar, that court reasoned:

> This would mean that a spouse owning property prior to the marriage could exchange that property, place such exchanged property in joint names and after many years of happy marriage, defeat the right of the other spouse in such property with the result that the other spouse would have no interest whatsoever in the property held in joint names. . . We believe the general assembly could not have, by the dissolution act, intended such a result. . . . If the only requirement to overcome the presumption that property acquired subsequent to marriage [is marital] was to show that the property was acquired in exchange for property acquired prior to the marriage many untoward and inequitable results would certainly follow. *Id.* at 622.

■ To overcome these inequitable results the Missouri Court of Appeals relied on its common–law presumption that "if a spouse pays the consideration and has a conveyance made in joint names, it will be presumed that it was intended as a settlement upon, or a provision for or a gift to the other spouse." *Id.* at n. 12. Incorporating that provision into its reading of the Missouri marital property statute, the court ruled that all property acquired subsequent to marriage in joint names is marital property subject to division unless it is shown *both* that the property was acquired in exchange for property acquired prior to marriage *and,* by clear and convincing evidence, that the transfer was not intended as a provision for or gift to the other spouse. As the court pointed out, that decision was in accord with the result reached in *In re Marriage of Moncrief,* 36 Colo.App. 140, 535 P.2d 1137, 1138 (1975),[3] and in *In re Mar-*

---

**3.** The *Moncrief* court also clarified the meaning of "gift" in this context, noting: "The parties' explanation that the title was placed in joint tenancy so as to avoid inheritance taxes does not overcome the presumption that a gift occurred; it merely expresses a reason why the gift was made." 535 P.2d at 1138. Motivation for the gift is irrelevant. In any event, retrospective statements of intention offered at the

riage of *Altman*, 35 Colo.App. 183, 530 P.2d 1012 (1974), based on the Colorado statute patterned after the Uniform Act. Maine has a similar "gift" presumption, *Greenberg v. Greenberg, supra*,[4] as do community property jurisdictions. *See, e. g., Ivancovich v. Ivancovich*, 24 Ariz.App. 592, 594, 540 P.2d 718, 720 (1975); *In re Marriage of Smith*, 79 Cal.App.3d 725, 742, 145 Cal.Rptr. 205, 212 (1978); *Hampshire v. Hampshire*, 485 S.W.2d 314, 316 (Tex.Civ.App.1972).

Commentators have noted that the court in *Conrad v. Bowers, supra*, deviated from the common–law presumption when it found that the conveyance into joint tenancy was a "contribution to or gift to the marital estate," 533 S.W.2d at 622, rather than to the individual spouse as separate property, thus classifying it as marital property subject to division by the court. Kalcheim, *Intention Controls: The Theory of Transmutation–the Effect of Placing Property Which Was Initially Non–Marital into Joint Tenancy; the Theory of Commingling–the Effect of Intermingling Marital and Non–Marital Funds*, 68 Ill.B.J. 320, 321 (1980); Krauskopf, *Marital Property at Marriage Dissolution*, 43 Mo.L.Rev. 157, 190–91 (1978). These commentators have equated the conveyance of property into joint tenancy and the Missouri court's treatment of that action with the community property doctrine of transmutation. *Id*.[5] This doctrine refers to a change in the character of the property from separate to marital "by an exercise of actual intention objectively manifested." *Young v. Young*, Me., 329 A.2d 386, 389 (1974). Thus, Professor Krauskopf concluded: "The *Conrad* decision establishes for Missouri the precedent that a *documentary* transaction can transmute otherwise separate property to marital property because it evidences an *intent*

to do so." Krauskopf, *Marital Property at Marriage Dissolution, supra*, at 192 (emphasis in original).

Treating the property held in joint tenancy as part of the marital estate fully accords with the principles and purposes of the Uniform Act as adopted in Maine. The exception from the definition of marital property for property acquired by gift, Section 722–A(2)(A), has no application to a transfer during marriage from one spouse to both spouses jointly. Such a transfer, in the absence of clear and convincing evidence to the contrary, must be understood as evidencing an intention to transfer the property to the marital estate. Thus, we adopt the analysis of the Missouri court enunciated in *Conrad v. Bowers, supra*.

This conclusion is consistent with the fundamental conception of marriage, having its roots in community property law, as a partnership or shared enterprise. *See Tibbetts v. Tibbetts, supra*, 406 A.2d at 76. This conception of marriage has been advocated by government–sponsored studies as well as numerous law review commentators. *See* Krauskopf, *A Theory for "Just" Division of Marital Property in Missouri*, 41 Mo.L.Rev. 165, 171–72 nn. 47 & 48 (1976), and authorities cited therein. Statutory recognition of the shared enterprise concept of marriage is expressed in the presumption that property acquired after marriage is marital regardless of how title is held.

Moreover, we avoid the illogical and inequitable results, as well as the complications, application of the "tracing" doctrine would produce in situations like that in the case at bar where the court would be required to ignore the couple's recognition of their partnership and the fact of the joint tenancy by awarding all of the property to the

---

time of divorce to defeat the other spouse's interest are highly suspect.

4. This Court acknowledged the *Greenberg* rule in *Tibbetts v. Tibbetts, supra*, 406 A.2d at 74 n. 4, noting that the parties had not invoked the rule in that case.

5. This transmutation analysis has been developed and followed in subsequent cases in Mis-

souri and in other jurisdictions with similar marital property statutes. *Klingberg v. Klingberg*, 68 Ill.App.3d 513, 25 Ill.Dec. 246, 386 N.E.2d 517 (1979); *Daniels v. Daniels*, 557 S.W.2d 702 (Mo.App.1977); *Jaeger v. Jaeger*, 547 S.W.2d 207 (Mo.App.1977). *See* Comment, *Maine Marital Property, supra*, at 348–49, recommending adoption of transmutation in Maine.

spouse who originally provided funds for its purchase. If that were the result, the other spouse would be worse off than under the prior law despite the "remedial" nature of the marital property statute, which was designed "to provide *a more equitable* method of distributing property upon the termination of marriage . . . ." *Fournier v. Fournier*, Me., 376 A.2d 100, 102 (1977) (emphasis added).

Furthermore, this treatment is also more equitable than leaving divorced parties with a joint tenancy. *See Poulson v. Poulson, supra.* In the words of the Missouri Court of Appeals, this

> was a half—way measure at best since it left the parties with a unity of possession after the marriage bond was severed, which, in many instances continued rather than alleviated the acrimony and discord which prompted scission of the marriage relation and relegated the parties to further litigation in order to sever the relationship attached to the common ownership of property. *Corder v. Corder, supra,* 546 S.W.2d at 803–04.

■ Finally, recognition that property transferred during marriage from one spouse to both spouses jointly is marital property permits the court to make a more equitable division of the property rather than a mechanical one–half to each. The court is thus directed to consider "all relevant factors" in making a just distribution. 19 M.R.S.A. § 722–A(1) (Supp.1979). Some of the relevant factors are enumerated in the statute:

> A. The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
> B. The value of the property set apart to each spouse; and
> C. The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children. *Id.*

The principles we now announce are consistent with our previous decisions seeking to elucidate the meaning of our marital property statute. In *Tibbetts v. Tibbetts, supra,* we stated:

> The shared enterprise or partnership theory of marriage is a major guiding principle in the separation and division of property at divorce. *Id.,* 406 A.2d at 76.

In *Young v. Young, supra,* although recognizing the doctrine of transmutation, we found it unnecessary to decide whether it had become a part of the law of Maine because the joint tenancy there involved had been created prior to the effective date of the marital property statute. We reasoned:

> Since "transmutation" is dependent upon an objectively manifested exercise of "intent", and since in the present context the legal structure establishing the critical distinction between "marital" and "non—marital" property had not yet come into existence at the time of defendant's alleged exercise of intent to "transmute" . . . ., there can be no rational possibility, here, that defendant had "transmuted." *Id.,* 329 A.2d at 390.

In the instant case, the joint tenancy was created on March 20, 1972, after the effective date of our marital property statute.[6] Therefore, we conclude that the transfer from one spouse to both spouses jointly evidenced an intent to make a gift to the marital estate.

■ It follows from our conclusion that the District Court erred in treating the "Ponderosa" as non—marital property. The case must, therefore, be remanded to the District Court for determination of the just distribution of the marital property in accordance with the mandate of Section 722–A(1). The court should keep in mind that it is rarely desirable to leave the parties as joint tenants, but a tenancy in common should be decreed if no further division is desirable. *Tibbetts v. Tibbetts, supra,* 406 A.2d at 77 n. 11. Moreover, because a tenancy in common continues some association

---

6. 19 M.R.S.A. § 722–A became effective January 1, 1972. P.L. 1971, ch. 399, § 6.

between the parties, it may be desirable for the court to terminate this association, if that can be done without economic disadvantages. *See Corder v. Corder, supra*; Comment, *Maine Marital Property, supra*, at 351; *cf. Zillert v. Zillert*, Me., 395 A.2d 1152, 1157 (1978), and cases cited therein.

The entry is:

Judgment of the Superior Court vacated.

Case remanded to the Superior Court with directions to remand to the District Court for proceedings consistent with the opinion herein.

All concurring.