2004 ME 23

**ESTATE OF Donald F. GORDAN**

Supreme Judicial Court of Maine.

Argued: Nov. 5, 2003.
Decided: Feb. 26, 2004.

John S. Campbell, Esq. (orally), Campbell & Associates, P.A., Portland, for appellant.

Fred W. Bopp III, Esq. (orally), Perkins, Thompson, Hinckley & Keddy, P.C., Portland, for Banknorth, N.A.

Christopher B. Ledwick, Esq. (orally), Douglas, Denham, Buccina & Ernst, P.A., Portland, for Douglas, Denham, Buccina & Ernst, P.A.

Panel: CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Elizabeth Wilson, on her own behalf and as the personal representative of the Estate of Donald F. Gordan, appeals from an order of instruction of the Cumberland County Probate Court (*Childs, J.*) declaring that Wilson's rights and the rights of Gordan's estate to real estate in Raymond, owned by Wilson and Gordan, were controlled by the 2001 District Court judgment (Portland, *Powers, J.*) granting a divorce to Wilson and Gordan. Wilson

argues that the real estate is hers as the surviving joint tenant and that her rights were not affected by the divorce judgment. Banknorth, N.A. and the law firm of Douglas, Denham, Buccina & Ernst, who are creditors of Gordan's estate, contend that the divorce judgment reflected the intention of Wilson and Gordan to sever their joint tenancy in the property. We vacate the order of instruction because we conclude that the divorce judgment did not transform the title to the Raymond property from joint tenancy to tenancy in common.

[¶ 2] Wilson also appeals from the Probate Court's denial of her motion for relief from default and default judgment concerning Banknorth's claim for a deficiency judgment against the estate. We conclude that the estate had good cause for its untimeliness and a meritorious defense to the claim, and we vacate the order.

## I. BACKGROUND

[¶ 3] Wilson and Gordan were divorced on June 21, 2001, and the divorce judgment incorporated their settlement agreement. The agreement provided that their jointly owned marital real estate in Raymond would be divided. Wilson and Gordan agreed that a survey would be done to establish a new property line, marked by an existing gate and fence, and the property would be divided into two parcels. Upon completion of the survey, Gordan would quitclaim his interest in the parcel upon which the marital house was situated to Wilson, and Wilson would give him a note and mortgage for $100,000. The remaining land would be sold, and after certain expenses were paid, Gordan would receive $200,000 of the proceeds. Any remaining proceeds would go to Wilson.[1]

The agreement stated that Gordan could remain in the marital home with Wilson until thirty days after he received the $200,000.

[¶ 4] Following the divorce, the parties took some steps to carry out the settlement agreement, but Gordan became ill and died before the property was divided in accordance with the agreement. Gordan's will provided that his personal property would go to his son and the remainder of his estate to Wilson. The will named his son as personal representative and his daughter as substitute representative, if the son predeceased him.

[¶ 5] The law firm of Douglas, Denham, Buccina & Ernst filed a claim against the estate for unpaid legal bills. The son, as personal representative, filed a petition for instruction as to whether the Raymond property was included in the estate. Wilson and the law firm filed memoranda with the court concerning the petition for instruction.

[¶ 6] Before the court acted on the petition, Banknorth filed a claim against the estate for a deficiency on an automobile loan, and the estate disallowed the claim. Banknorth then filed a petition to resolve the disputed claim and for allowance of the claim and a memorandum regarding the petition for instruction. Upon receiving Banknorth's petition, the probate register notified the estate of the beginning of a formal probate proceeding and scheduled a hearing on Banknorth's petition for January 22, 2003. After the son received notice of the formal probate proceeding, he filed his resignation as personal representative on November 26, 2002, notifying the various creditors and Wilson. Wilson then made application for appointment as per-

1. The agreement also provided for the contingency that the proceeds would be less than $200,000.

sonal representative, and she was appointed on January 23, 2003.

[¶ 7] On January 22, however, which was the date set for the hearing on Banknorth's petition regarding the disputed claim for a deficiency on an automobile loan, Banknorth filed a motion for default and default judgment against the estate in the amount of the claim. That same day, the Probate Court granted Banknorth's motion, finding that the estate had "failed to appear in opposition to, plead, answer, or otherwise defend" Banknorth's petition. The court entered a judgment for Banknorth against the estate in the amount of $3379.71. A few days later, Wilson filed a motion for relief from the entry of default and the default judgment on the ground that she had not been given notice of the request for a default. The court denied her motion.

## II. REAL ESTATE

[¶ 8] The request for instruction to the Probate Court asked whether the joint tenancy of Gordan and Wilson in the Raymond real estate was severed by the divorce judgment. The Probate Court found that the settlement agreement and divorce judgment intended to sever the joint tenancy in the Raymond real estate and that Gordan's rights in the property survived his death and are enforceable against Wilson. The court held that Wilson was not entitled to the real estate as she would

have been if the divorce had not taken place. The court found that it was the personal representative's duty "to take all necessary steps to enforce the estate's rights in the Raymond real estate and to satisfy all valid creditor's claims and estate expenses." [2]

[¶ 9] Wilson contends that the divorce judgment did not sever the joint tenancy and that she, as a joint tenant with rights of survivorship, is the owner of the real estate. She relies on *Poulson v. Poulson,* 145 Me. 15, 70 A.2d 868 (1950), which involved a petition to partition real estate titled in joint tenancy. The owners were divorced spouses. We acknowledged the general rule that joint tenancy is not affected by a divorce and held that each party was entitled to a one-half interest in the partitioned real estate. *Id.* at 18–23, 70 A.2d at 870–72.

[¶ 10] Banknorth and the law firm take the position that the judgment divorcing Wilson and Gordan severed the joint tenancy and established a tenancy in common.[3] The creditors rely on case law from other jurisdictions for the proposition that a divorce judgment based upon a settlement agreement severs a joint tenancy if the wording of the settlement agreement or judgment indicates that it was the intent of the parties to sever the joint tenancy. For example, the Alabama Supreme Court held that a divorce severed a joint

2. The court also noted that it was aware of the conflict between Wilson's interest in the real estate and her duty as the personal representative. After Wilson filed the notice of appeal, Banknorth filed a petition to remove Wilson as the personal representative. Because the Probate Court granted a stay pending appeal, it declined to act on Banknorth's request while the stay is in effect.

3. In the alternative, the creditors urge that the real estate be treated as omitted property and, pursuant to the omitted property statute,

19-A M.R.S.A. § 953(9) (1998), be deemed owned by the parties as tenants in common. The statute, however, applies only when "a final divorce decree fails to set apart or divide marital property." *Id.* The divorce judgment here expressly disposed of the real estate, and, therefore, it cannot be considered omitted property. *Cf. Stotler v. Wood,* 687 A.2d 636, 638–39 (Me.1996) (affirming the trial court's decision to divide a pension as omitted property when the judgment and settlement agreement failed to mention the pension).

tenancy and created a tenancy in common where the property settlement and judgment provided that the wife, upon the husband's refinancing of the mortgage in his own name, would quitclaim her one-half interest in the jointly owned property to the husband. *Fitts v. Stokes*, 841 So.2d 229, 230 (Ala.2002). The court concluded that the settlement agreement, which referred to each party's one-half interest, evidenced their intent to sever the joint tenancy. *Id.* at 232. Likewise, the South Dakota Supreme Court held that a divorce settlement agreement, which provided that the jointly owned real estate would be sold and the proceeds divided, and in which the parties waived any interest in the other's estate, was inconsistent with the rights of survivorship. *Zulk v. Zulk*, 502 N.W.2d 116, 117, 120 (S.D.1993).

[¶ 11] Although the courts in the *Fitts* and *Zulk* cases emphasized the language in the agreements such as "one-half interest" or the mutual waiver of the other party's interest, other courts have held that settlement agreements that provide for the sale of the real estate and the division of the proceeds sever the joint tenancy because they are inconsistent with rights of joint tenancy. *E.g., Estate of Estelle,* 122 Ariz. 109, 593 P.2d 663, 666–67 (1979); *Bradley v. Mann,* 34 Colo.App. 135, 525 P.2d 492, 494 (1974); *Estate of Coleman,* 77 Ill.App.3d 397, 32 Ill.Dec. 828, 395 N.E.2d 1209, 1211 (1979). The general rule from all of these jurisdictions is that divorce itself does not terminate a joint tenancy, but when the parties express their intention to sever the joint tenancy or engage in conduct that is inconsistent with a joint tenancy, the joint tenancy is severed.

[¶ 12] The Maine precedent most analogous to the present situation is *Fitzgerald v. Trueworthy,* 476 A.2d 183 (Me.1984). In that case, the divorce judgment provided that the husband would pay the installments due on the debt secured by the mortgage on the marital home until the minor children had completed high school. *Id.* at 184. Then, the house was to be sold and the proceeds divided equally with credit to be given to the party who made major repairs to the house. The husband died, and the personal representative of his estate sought an order in the divorce court to force a sale of the home and division of the proceeds. The wife argued that she owned the property free of any encumbrances by her rights of survivorship as a joint tenant. *Id.* at 185. We held that the death of the husband did not change the *in personam* obligation of the wife to sell the real estate and pay one-half of the proceeds to his estate. We said that the divorce judgment created a personal duty of both the husband and the wife to carry out the division of the real estate:

> The divorce judgment in imposing that personal duty upon both parties was completely blind to the exact status of the legal title to the premises; it made no difference whether either one was the sole title holder or they held it as tenants in common or joint tenants. When the time came to effect the even division, whichever of them held the legal title in whole or part was obligated by court order to carry out the partition by sale.

*Id.* at 185–86. Thus, in *Fitzgerald,* the joint tenancy of the property was not severed by the divorce, but the wife had to fulfill her duty to pay the obligation imposed upon her by the divorce judgment.

[¶ 13] Both Wilson and Banknorth argue that *Fitzgerald* is applicable to the instant case. Wilson emphasizes that the court in *Fitzgerald* did not state that the joint tenancy was severed, and Banknorth relies on the fact that the court imposed the obligation on the surviving spouse to carry out her responsibilities under the judgment.

If we apply *Fitzgerald,* the practical effect will be that Wilson will take the property, but she and the estate will have to carry out their respective obligations according to the settlement agreement. If we determine that the joint tenancy was severed, Wilson and the estate will each be entitled to a one-half interest.

[¶ 14] We are persuaded, however, that where a settlement agreement and a divorce judgment provide for a future sale or disposition of the real estate and are silent on the parties' intentions as to whether the property remains in joint tenancy pending the disposition, it should not be presumed that the parties intended an immediate severance of the joint tenancy. Although the settlement agreement here evidences Wilson and Gordan's intention of a future severance of the joint tenancy, that severance was to be accomplished with the quitclaim deed that Gordan was to give to Wilson as soon as the survey work was completed. The provision that Gordan could reside in the marital home and the requirement of survey work lend support to the conclusion that an immediate severance of the joint tenancy was not intended by these parties.

[¶ 15] However, as we said in *Fitzgerald,* the obligation that the divorce court imposed on Wilson survives the death of Gordan. Therefore, Wilson, in her individual capacity, is required to fulfill her promise in the settlement agreement.

## III. DEFAULT JUDGMENT

[¶ 16] Wilson appeals the denial of her motion for relief from the default and default judgment entered against the estate on Banknorth's claim. The Probate Court found no good cause or other reason to set aside the default or relieve the estate from the judgment.

[¶ 17] The default and default judgment were entered on January 22, 2003, which was the date scheduled for a hearing on Banknorth's petition to resolve the disputed claim, and no one representing the estate appeared at the hearing. On November 12, 2002, notice of that hearing had been provided to the son, who was the personal representative of the estate at that time. The son promptly sent his notice of resignation as personal representative to all parties and filed it with the court on November 26, 2002. The notice stated that his resignation was effective on December 13, 2002. The Probate Code provides, however, that the resignation of a personal representative "is effective only upon the appointment and qualification of a successor representative." 18–A M.R.S.A. § 3–610(c) (1998).

[¶ 18] Wilson's appointment as successor representative is dated January 23, 2003, one day after the entry of the default judgment for Banknorth. Wilson signed her appointment application on December 23, 2002, but the court did not appoint her until after she filed a renunciation of appointment from the daughter, who had been named an alternate representative in Gordan's will. After her appointment, Wilson promptly filed a motion for relief from the default and default judgment. The court did not hold a hearing on the motion. It issued its ruling denying the motion at the same time it ruled on the request for instructions.

[¶ 19] By virtue of M.R. Prob. P. 55(b), motions to set aside a default and default judgment are governed by M.R. Civ. P. 55(c). Rule 55(c) allows a court to set aside a default and default judgment when there is good cause. Good cause requires a good excuse for untimeliness and a meritorious defense. *Truman v. Browne,* 2001 ME 182, ¶ 9, 788 A.2d 168, 170. We review the denial of a motion to

set aside a default and default judgment for an abuse of discretion. *Id.*

[¶ 20] Banknorth does not argue that the estate was required to file a response to its petition. It argues that the estate's default is based on its failure to appear at the January 22 hearing. We conclude, however, that the estate demonstrated a good excuse for failing to appear at the hearing. Although the son was still the personal representative pursuant to section 3–610(c) of the Probate Code in spite of his attempted resignation, Wilson had promptly taken steps to be appointed personal representative. All parties had notice that the son intended to resign and that Wilson was seeking the appointment. There is no indication that Wilson had notice of the January 22 hearing, although Banknorth had notice of the son's resignation. This sequence of events and the court's file should have alerted Banknorth and the court to the attempted resignation of the son and the pending appointment of Wilson as a likely explanation for the non-appearance of the estate at the hearing. Indeed, Wilson was appointed personal representative the next day, and she acted promptly to seek relief from the default. Because Wilson acted within a few days to seek relief, Banknorth was not subjected to a lengthy delay caused by the estate's nonappearance at the hearing.

[¶ 21] The second requirement for good cause in the context of setting aside a default and default judgment is a meritorious defense. Banknorth's claim stems from a loan to Gordan to purchase a 1993 Chevrolet Lumina, on which Banknorth declared a default for nonpayment. Banknorth repossessed the automobile and sold it. According to Banknorth's affidavit, the amount owing on the loan at the time of repossession was $3357.61 plus interest of $102.10. A document attached to Banknorth's affidavit states that the New Eng-

land Used Car Guide gave a base value of $3450 for a 1993 Chevrolet Lumina and an adjusted value for mileage of $2560. Banknorth also averred that the auction value of a 1993 Chevrolet Lumina in good condition was $1135, but that this vehicle had a left door that did not open, a scraped bumper, a small dent, and a dead battery. Banknorth sold the vehicle at auction for $400, and the costs of repossession and sale were $320. After adding costs and interest and deducting the sale proceeds, the deficiency claimed was $3379.71.

[¶ 22] At the time it initially disallowed the claim, the estate disputed Banknorth's claim on the ground that the sale was not commercially reasonable. In its motion to set aside the default, the estate argued that that the sale price of $400 was unreasonable. In its affidavit, the estate offered proof that the retail value of a 1993 Chevrolet Lumina was $3950.

[¶ 23] A meritorious defense is one with merit, that is, one that is colorable and not frivolous. In determining whether there is a meritorious defense, the facts submitted by the moving party are deemed to be true. *Hart v. Terry L. Hopkins, Inc.,* 588 A.2d 1187, 1190 (Me. 1991).

[¶ 24] A low price obtained by a creditor in the disposition of collateral does not, by itself, signify that the sale was not made in a commercially reasonable manner. 11 M.R.S.A. § 9–1627(1) (Pamph.2003). However, "a low price suggests that a court should scrutinize carefully all aspects of a disposition to ensure that each aspect was commercially reasonable." *Id.,* U.C.C. cmt. 2. Taking the assertion of the retail value of the vehicle in the estate's affidavit as true, for purposes of the motion, we conclude that the motion must be granted because it presents a meritorious defense to the deficiency claim.

The entry is:

Order on petition for instruction vacated. Order denying motion for relief from judgment vacated. Case remanded for further proceedings consistent with this opinion.