STATE OF MAINE RECEIVED & FILED SUPERIOR COURT
ANDROSCOGGIN, ss. CIVIL ACTION
DOCKET NO. CV-08-165
ANDROSCOGGIN
SUPERIOR COURT JAW-AND- 12/8/2008

NORTHEAST BANK,

Plaintiff

DECISION AND ORDER

v.

MAVIS PATTERSON,

Defendant

## BEFORE THE COURT

This matter is before the Court on the defendant's motion for summary judgment.

## BACKGROUND AND PROCEDURAL HISTORY

This is a foreclosure action brought by Northeast Bank (the Bank) against the defendant Mavis Patterson (Patterson). The following facts are not in dispute. On September 15, 2006, Patterson entered into a Note, Disclosure and Security Agreement (Note) with the Bank, whereby Patterson promised to pay to the Bank the sum of $92,300.33, in accordance with the terms and conditions of the Note which provided for one hundred eighty (180) payments of $882.40 per month commencing on October 15, 2006. Patterson borrowed the money to purchase a 2007 recreational vehicle (RV). To secure the sums due under the Note, Patterson granted to the Bank a security interest in the RV. On February 14, 2008, Patterson received a letter from the Bank stating that she was in default on her payments and providing notice of her right to cure. Patterson does not contest that she was in default.

Patterson contacted the Bank and the Bank advised her to sell the RV at an approved price and turn over the proceeds from the sale. Patterson agreed to this arrangement, and the RV was sold for a sum of $45,000, which Patterson then turned over to the Bank. The Bank claims that Patterson now owes the deficiency balance that remains on her loan in the sum of $49,792.30.[1]

The defendant filed a motion for summary judgment on September 16, 2008, seeking the alleged balance owed after the sale. Patterson filed opposition thereto on October 14, 2008, after requesting an enlargement of time to respond, arguing that a post-sale demand was not made, the RV was not sold at the fair market value, and she did not voluntarily agree to make payment in full after sale of the RV.

## DISCUSSION

### I.    Standard of Review.

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 22. A party wishing to avoid summary judgment must present a prima facie case for

---

[1] Additional interest continues to accrue on the principal balance at a rate of $9.88 for each day subsequent to September 9, 2008.

2

the claim or defense that is asserted. *Reliance National Indemnity v. Knowles Industrial Services*, 2005 ME 29, ¶ 9, 868 A.2d 220, 224-25. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, 65.

## II.    Was Post-Sale Demand Required?

Patterson argues that summary judgment is not appropriate because there is a genuine issue of material fact as to whether the Bank provided post-sale demand to Patterson. She contends that the letter providing default notice dated February 14, 2008 did not contain an acceleration clause and did not authorize a demand for payment in full prior to the sale of the RV. Thus, additional demand was required after the sale was made.

Although the Note does not contain an acceleration clause, the February 14 notice provided by the Bank prior to the sale stated that if the motor vehicle was sold, the consumer may owe the difference between the net proceeds from the sale and the remaining balance due under the contract. The notice provided by the Bank complies with the Maine Consumer Credit Code, 9-A M.R.S. § 5-110 (2008).[2] According to Maine law, the Bank was not required to make additional

---

[2] A creditor is required to provide the requisite notice of right to cure pursuant to section 5-110, which specifically provides:

> With respect to a consumer credit transaction, after a consumer has been in default for 10 days for failure to make a required payment and has not voluntarily surrendered possession of goods that are collateral, a creditor may give the consumer the notice described in this section. For purposes of this section, goods that are collateral shall include any right of set-off that the creditor may have . . . . 9-A M.R.S. § 5-110(1).

Notice to cure is in compliance if it states:

> You are late in making your payment(s). If you pay the AMOUNT NOW DUE (above) by the LAST DAY FOR PAYMENT (above), you may continue with the

3

demand after providing initial notice. *Id., see also Griffin v. Chrysler Credit Corp.,* 553 A.2d 653, 655 (Me. 1989). After providing notice, the Bank was entitled to proceed against Patterson for the balance due on the account if she failed to cure the default. See 9-A M.R.S. § 5-111(2) (2008).[3] Section 5-111 makes clear that once the creditor provides notice pursuant to section 5-110, the debtor's obligation is the unpaid balance of the account. *Id.* Patterson defaulted on her payments after receiving notice on February 14. In accordance with sections 5-110 and 5-111 of the Maine Consumer Credit Code, the Bank did not need to provide additional notice before proceeding against Patterson.

### III. Was the Sale Commercially Reasonable?

---

contract as though you were not late. If you do not pay by that date, we may exercise our rights under the law.

If you are late again within the next 12 months in making your payments, we may exercise our rights without sending you another notice like this one. If you have questions, write or telephone the creditor promptly.

2-A. If a consumer credit transaction is secured by a motor vehicle, the notice must conform to the requirements of subsection 2, except that the following paragraph must be included between the penultimate paragraph and the final paragraph:

The rights we may exercise under law include repossession of the motor vehicle securing this debt. If the motor vehicle is repossessed, either involuntarily or voluntarily, it may be sold and you may owe the difference between the net proceeds from the sale and the remaining balance due under the contract . . . . 9-A M.R.S. § 5-110(2).

[3] Subsection 2 of section 5-111 provides:

With respect to defaults on the same obligation and subject to subsection 1, after a creditor has once given a notice of consumer's right to cure, as provided in section 5-110, this section gives the consumer no right to cure and imposes no limitation on the creditor's right to proceed against the consumer or goods that are collateral with respect to a default that occurs within 12 months after an earlier default as to which a creditor has given a notice of consumer's right to cure, as provided in section 5-110. For the purpose of this section, in open-end credit, the obligation is the unpaid balance of the account.

4

Patterson contends that the sale of the RV was not commercially reasonable, and was instead a distress sale. The sale was made for $45,000 and Patterson argues that the RV was worth approximately $65,000.

After default, "[e]very aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable." 11 M.R.S. § 9-1610 (2008).[4] If a creditor brings an action against a consumer for a deficiency judgment after the sale, the burden of proof as to the commercial reasonableness of the sale is on the creditor. 17 AM. JUR. 2D *Consumer and Borrower Protection* § 357 (2008).

The low price obtained by a creditor in the disposition of collateral is not dispositive of whether a sale was made in a commercially reasonable manner. 11 M.R.S.A. § 9-1627(1) (2008). However, the Law Court has recognized that "a low price suggests that a court should scrutinize carefully all aspects of a disposition

---

[4] The Maine Uniform Commercial Code sets forth factors to consider in making the determination of whether conduct was commercially reasonable:

> 1) The fact that a greater amount could have been obtained by a collection, enforcement, disposition or acceptance at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the collection, enforcement, disposition or acceptance was made in a commercially reasonable manner.

> 2) A disposition of collateral is made in a commercially reasonable manner if the disposition is made:

> a) In the usual manner on any recognized market;

> b) At the price current in any recognized market at the time of the disposition; or

> c) Otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition . . . .

11 M.R.S. § 9-1627 (2008).

to ensure that each aspect was commercially reasonable." *Estate of Gordon*, 2004 ME 23, ¶ 24, 842 A.2d 1270, 1276 (quoting 11 M.R.S.A. § 9-1627(1), U.C.C. cmt. 2). Whether a sale of collateral by a creditor was conducted in a commercially reasonable manner is a question of fact to be determined by the trier of fact from a consideration of all relevant factors in the particular case. 17 AM. JUR. 2D at § 357.

The facts submitted seem to suggest that the sale was commercially reasonable. Patterson acknowledges in her affidavit that the dealership from which she bought the RV refused to buy it back and she was unable to market it for an amount equal to the remaining loan balance. She then made a voluntary arms-length sale, which the Bank had recommended and approved. Patterson claims, however, that the sale was made at the behest of the Bank and that she believed she had no choice at the time the transaction was made.

In support of her argument, Patterson's testifies by affidavit that another dealer advised her that the fair market value of the RV was $65,000. Statements made by another dealer are inadmissible hearsay and should not come in pursuant to rule 56(e), which requires the opponent of a summary judgment motion to "set forth such facts as would be admissible in evidence" to show that a genuine issue of fact exists. M.R. Civ. P. 56(e) (2008); *See also Bangor & Aroostook R.R. Co. v. Daigle*, 607 A.2d 533, 535-36 (Me. 1992). While the court cannot consider the statements made by another dealer to Patterson, Patterson's opinion testimony as to the fair market value is admissible. A property owner, by reason of ownership alone, may testify as to their opinion of their property's fair market value. *Landry v. Landry*, 1997 ME 173, ¶ 8, 697 A.2d 843, 485-86; M.R. Evid. 701.

Although the lower price actually received does not, by itself, signify that the sale was not made in a commercially reasonable manner, the question of whether the sale was commercially reasonable is a question of fact that should be carefully scrutinized by the trier of fact. The burden of proof as to the commercial reasonableness lies with the creditor. While the facts presented suggest that the sale was commercially reasonable, the court cannot say, as a matter of law, that it was reasonable, based on the evidence provided. Thus, Patterson has provided sufficient evidence to survive summary judgment on this issue.

## IV. Was Voluntary Agreement After the Sale Required?

The third argument Patterson raises to avoid summary judgment is that she did not voluntarily agree to make payment in full after selling the RV. She also seems to be making the argument that the Bank led her to believe that the loan would be discharged. According to Patterson, she understood that the remaining balance would be discharged based on the statements of one of the Bank's representatives, Marilyn Thomas (Thomas). Patterson claims in her affidavit that when Patterson came into the Bank to discuss the default, Thomas told Patterson that she would ask the Bank to discharge the loan.

Although Patterson may have been justifiably hopeful that the loan would be discharged based on her conversation with Thomas, the facts provided do not adequately support the argument that the Bank made the decision to discharge Patterson's loans or led her to believe that this decision had been made. Patterson acknowledges in her affidavit that Thomas' supervisor was not present during their meeting and that Thomas stated that she didn't think her supervisor would be happy with the request but that she saw it as necessary. Thomas never

7

relayed her supervisor's response to Patterson or confirmed the fact that the loan would be discharged. The February 14 letter of notice cautioned Patterson that if the vehicle were sold she may owe the difference between the net proceeds from the sale and the remaining balance due under the contract. The Bank's decision to exercise this right was within its authority and should have come as no surprise to Patterson. The argument that Patterson's voluntary agreement was required therefore fails.

## CONCLUSION

The defendant's motion for summary judgment is DENIED.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATED: December 8, 2008

_____
Joyce A. Wheeler, Justice

8