STATE OF MAINE
YORK, ss.

SUPERIOR COURT
Civil Action
Docket No. CV-15-0296

ESTATE OF FRANCINE KELLY and )
WAYNE KELLY, )
)
Plaintiffs, )
)
v. )
) ORDER GRANTING
) SUMMARY JUDGMENT
WORLD KITCHEN, LLC d/b/a )
CORNING CONSUMER PRODUCTS )
COMPANY, )
)
Defendant. )

Before the court is World Kitchen LLC d/b/a Corning Consumer Products Company's ("World Kitchen") motion to dismiss. A non-testimonial hearing on the motion initially had been scheduled for March 5, 2020 but was continued due to the court's last-minute unavailability. Because of the subsequent suspension of civil dockets by the Maine Supreme Judicial Court's March 13, 2020 Emergency Order and Notice (superseded by its March 30, 2020 Pandemic Management Order), holding a non-testimonial hearing on this motion will be delayed, perhaps considerably. After further review of the parties' submissions, the court determines that such a hearing is not necessary for disposition of the motion. For the reasons set out below, the court treats the motion as one for summary judgment pursuant to Rules 12(b) and 56 of the Maine Rules of Civil Procedure and grants summary judgment for World Kitchen.

## I. Background

In December 2015 Francine Kelly and her husband, Wayne Kelly, filed this action to recover damages for injuries sustained in September 2012 when Francine tripped and fell as she was walking towards "Corningware, Corelle & More", one of several stores in the Kittery Place Mall located at 336 U.S. Route One in Kittery, Maine. The original

1

complaint named two defendants—World Kitchen, owner and operator of the store, and Spruce Bend Limited Liability Company ("Spruce Bend"), owner/lessor of the land on which the mall is situated. An amended complaint was filed in June 2016 naming a third defendant, Kittery Place, LLC ("Kittery Place"), lessee of the land and manager/operator of the mall.

Thereafter, the following actions occurred. A default was entered upon request against World Kitchen as a result of its failure to file a timely responsive pleading. World Kitchen's subsequent motion to lift the default was denied because it had failed to demonstrate good cause. The other two defendants moved for summary judgment in August 2018. The motion was granted as to Spruce Bend but denied as to Kittery Place in February 2019. Kittery Place subsequently reached a settlement with plaintiffs, resulting in its dismissal from the case.

In November 2019 a trial management conference was held in preparation for a damages trial with respect to World Kitchen. Prior the conference, plaintiffs filed a motion for leave to file a second amended complaint for the purpose of asserting a claim for damages under the wrongful death statute.[1] Francine Kelly had passed away in November 2017 and her estate had been substituted as a party plaintiff. Without opposition, the motion for leave to file the amended complaint was granted.

The effect of amending the complaint is such that it opens up, and lifts by operation of law, the previously entered default against World Kitchen. *TD Banknorth,*

---

[1] Plaintiffs' amended complaint asserts the same two causes of action with respect to World Kitchen as were brought in the original complaint, namely negligence and loss of consortium. The negligence claim is grounded upon allegations that World Kitchen was "in possession of, and/or in control of the premises upon which [it] conducted its business"; "was responsible for the management, maintenance and monitoring of the areas around the said retail business"; and "had allowed dangerous conditions to exist in the area of the parking lot" leading to the entrance of its store at a time when the store was displaying wares on the sidewalk between the store and the parking lot. (Second Amended Complaint, ¶¶ 10-12, 17.)

2

*N.A. v. Hawkins*, 2010 ME 104, ¶ 22, 5 A.3d 1042. World Kitchen timely filed the instant motion to dismiss the amended complaint.

Rule 12(b)(6) motions to dismiss are generally decided on the basis of facts pleaded in the complaint. When matters outside the pleading are presented in support of such a motion and not excluded by the court, a motion to dismiss "shall be treated as one for summary judgment and disposed of as provided by Rule 56, and all parties shall be given a reasonable opportunity to present all material made pertinent to such motion by Rule 56." M.R. Civ. P. 12(b). World Kitchen predicated its motion on the undisputed summary judgment factual record set forth in the February 2019 summary judgment order. In opposition, plaintiffs filed a statement of material facts with supporting record documentation. In reply, World Kitchen filed a response to the plaintiffs' statement of material facts as well as its own supplemental statement of material facts. The court concludes that the parties have been given a reasonable opportunity to present all pertinent material consistent with Rule 56. It is appropriate, given the posture of the case, to treat this motion as one seeking summary judgment.

## II. Facts

The undisputed facts relevant to this motion are as follows.

1. On September 10, 2012, Francine Kelly and her husband, Wayne Kelly, were returning to New York with two friends when she expressed an interest in stopping at the Kittery Place Mall on U.S. Route One in Kittery to visit the Corningware, Corelle & More store, one of a number of stores in the mall.

2. The vehicle in which they were riding pulled into the mall parking lot and parked in a lined parking space to the right of a vacant parking space located in front of Corningware, Corelle & More.

3

3. Francine Kelly, who was sitting in the back seat directly behind the driver, got out of the vehicle and began walking in the adjacent, vacant parking space toward Corningware, Corelle & More. There was a concrete wheel stop at the head of this parking space near the sidewalk.

4. Francine Kelly tripped over this wheel stop and fell forward, with her face striking the sidewalk. Immediately after the fall, Wayne Kelly observed her lying face down in a prone position, with her head on the sidewalk and her arms under her body.

5. On September 10, 2012, Kittery Place possessed and occupied with the intent to control the real estate located at 336 U.S. Route One in Kittery, Maine, known as the Kittery Place Mall pursuant to a 1987 lease from the landowner, Spruce Bend.

6. Kittery Place leased one of the interior retail spaces in a building on the premises to World Kitchen. The space leased to World Kitchen did not extend beyond the building envelope, and did not include any portion of the parking lot.

7. With respect to the parking lot, the lease provides that World Kitchen as well as its business guests, licensees and invitees:

> "shall be *entitled to the non-exclusive use of the parking areas, driveways and walkways* within the Site (hereinafter referred to as the "Common Areas"), but such use shall be in common with [Kittery Place] and all others to whom [Kittery Place] has or may hereafter grant similar nonexclusive owners and tenants of the Site . . . provided, however, that such use by [World Kitchen] shall be subject to the rules and regulations as [Kittery Place] may from time to time adopt governing the same; and *provided, further, that [Kittery Place] shall at all times have full control, management and direction of said Common Areas . . . ."*

DSMF, at ¶ 20 (Emphasis added.)

8. The lease states further that Kittery Place, as landlord, "shall provide the care, maintenance and repair of the Common Areas on the Site," including the parking lot. *See* DSMF, at ¶ 21.

4

9. The wheel stop over which Francine Kelly tripped was in the parking lot, and thus located entirely within the Common Areas of the Site. DSMF, at ¶ 22.

10. On September 10, 2012, the Corningware, Corelle & More store was displaying merchandise on the sidewalk outside of its door.

11. Two days after Francine Kelly's fall, Michael Harris, manager of Corningware, Corelle & More, notified Kittery Place's property manager of a second incident that had occurred that same day (September 12th) in which another woman tripped over the wheel stop which he described as "not centered in the parking space." Mr. Harris requested that this be remedied. (DRPSMF, at ¶ 27; Aff. of Michael Harris, at ¶ 3, Ex. 2.)

### III. Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and defendant, as the moving party, is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. Defendant is entitled to judgment if the undisputed facts, when viewed in the light most favorable to plaintiff, fail to establish a *prima facie* case for all elements of a negligence claim—and in particular, here, the establishment of a duty of care on the part of World Kitchen to plaintiffs. *See Bonin v. Crepeau*, 2005 ME 59, ¶ 8, 873 A.2d 346; *Burdzel v. Sobus*, 2000 ME 84, ¶ 9, 750 A.2d 573.

Whether a party owes a duty of care in tort is a question of law to be determined by the court. *Brown v. Delta Tau Delta*, 2015 ME 75, ¶¶ 9, 14, 118 A.3d 789: *Davis v. R. C. & Sons Paving, Inc.*, 2011 ME 88, ¶ 11, 26 A.3d 787. In the context of premises liability cases, the existence of a duty turns on possession or control. *Denman v. Peoples Heritage Bank*, 1998 ME 12, ¶ 4, 704 A.2d 411. *See also* Restatement (Second) Torts, § 360. Even though determination of the existence of a duty of care is a question of law, the inquiry is "fact-intensive." *Brown*, 2015 ME 75, ¶ 14.

5

It is undisputed that Francine Kelly tripped over a wheel stop at the head of a vacant parking space as she was walking toward defendant's store. It is also undisputed that the wheel stop over which she tripped, the vacant parking space in which she was walking, and the parking lot as a whole serving all stores in the mall were part of the "Common Areas" under the exclusive possession and control of Kittery Place. While business invitees of World Kitchen (and presumably other stores in the mall) were entitled to use the parking lot, Kittery Place retained "full control, management and direction" of the "Common Areas", which includes the parking lot. And, on September 12, 2012, Michael Harris, manager of the Corningware, Corelle & More store notified Kittery Place LLC's agent of this incident as well as a subsequent incident, attributed them to a misaligned wheel stop in the parking lot, and requested that this be remedied.[2]

These facts, all undisputed, distinguish this case from those which plaintiffs cite in support of their defense to the motion, including particularly *Libby v. Perry*, 311 A.2d 527 (Me. 1973) and *Pelletier v. Fort Kent Golf Club*, 662 A.2d 220 (Me. 1995).[3] Rather,

---

[2] There is some dispute as to whether Mr. Harris was also aware of another incident that may have occurred a year before Francine Kelly's fall. For purposes of this motion, the court accepts plaintiffs' version—i.e. that Harris or another agent of World Kitchen was aware that someone had fallen in the parking lot in the year prior to the Kelly incident. That fact, whether considered independently or in conjunction with all other undisputed material facts, does not give rise to a duty of care on the part of World Kitchen in these circumstances

[3] *Libby v. Perry* held that "the owner or occupier of land" owed a "positive duty" to business invitees to provide a reasonably safe premises, and this duty extended "beyond the precise boundary of the premises" to include "approaches which they are expressly or impliedly expected to use." *Libby*, 311 A.2d at 535. In *Libby*, an attendee at a New Year's Eve dance held at the National Guard Armory in Augusta slipped on ice just after stepping off stairs which lead to a public parking lot. The Law Court rejected defendants' argument that it had no duty because its rental agreement did not include the lease of the public parking lot. However, *Libby* involved a situation in which the building owner/occupier itself was allowing its own building to be used for a one-time event; and neither the parking lot owner nor the relationship between defendants and the parking lot owner was identified. Here, World Kitchen is one of a number of stores whose patrons use a parking lot over which the occupier/possessor of the land—Kittery Place LLC— had exclusive control and was expressly responsible for maintaining it. Likewise, *Pelletier v. Fort Kent Golf Club* is distinguishable. In *Pelletier*, a golfer was injured when her ball struck railroad tracks that ran across the fairway, ricocheted back, and struck her in the face. The Law Court, citing *Libby*, rejected defendant's disclaimer of responsibility based on lack of ownership of the tracks and the strip of land on which they were located; and held that because defendant

6

the facts here more closely resemble those in *Quadrino v. Bar Harbor Banking & Trust Co.*, 588 A.2d 303 (Me. 1991). In *Quadrino*, a pedestrian tripped on a curb and fell onto defendant's property, breaking four ribs and fracturing his wrist. The curb was constructed and maintained by the Maine Department of Transportation. The Law Court affirmed the trial court's grant of summary judgment for defendant, who was not the owner, occupier or possessor of the land on which the curb was located. Likewise, as noted above, World Kitchen neither owned nor possessed the land on which the wheel stop was located. Moreover, its store was only one tenant in a multi-unit mall. Courts in a number of other jurisdictions have declined to extend a duty of care to individual stores in similar circumstances. *See Holmes v. Kimco Realty Corp.*, 598 F.3d 115 (3rd Cir. 2010); Frank D. Wagner, Annot., *Liability of Lessee of Particular Premises in Shopping Center for Injury to Patron from Condition on Portion of Premises Not Included in Leasehold,* 48 A.L.R.3d 1163 (2009).

## IV. Conclusion and Order

For the reasons set out above, the court concludes that there are no genuine issues of facts material to the motion and that plaintiffs have failed to make a *prima facie* showing of negligence as pleaded in Count I of the amended complaint. Therefore summary judgment as to the negligence claim in Count I is warranted. Because the loss of consortium in Count II is wholly derivative of and dependent upon the negligence claim, summary judgment is also warranted with respect to the loss of consortium claim as well.

---

"possessed" the tracks, its duty extended to land which it invited golfers to use. *Pelletier,* 662 A.2d at 222. Unlike the tracks in *Pelletier,* the wheel stop in this case was not "possessed" by World Kitchen. Even if World Kitchen manifested an intent to possess the sidewalk by placing merchandise thereon, the wheel stop was not located on the sidewalk. It was in the parking lot, over which Kittery Place LLC had exclusive possession, control, and authority.

Accordingly, for the reasons set out above it is hereby ordered and the entry shall be: "Defendant World Kitchen LLC's motion is granted and summary judgment entered in favor of World Kitchen LLC d/b/a Corning Consumer Products Company."

The clerk may enter this Order Granting Summary Judgment on the docket by reference pursuant to M.R. Civ. P. 79(a).

SO ORDERED

Dated: April 14, 2020

Wayne R. Douglas
Justice, Superior Court

ENTERED ON THE DOCKET ON: 4/14/2020

8

**ALFSC-CV-2015-296**

**PLAINTIFF'S ATTORNEY**

THOMAS ELIAS ESQ
ELIAS LAW OFFICES
28 LONG SANDS ROAD SUITE 5
YORK ME 03909

**DEFENDANT'S ATTORNEY**
STEVEN WRIGHT ESQ
WRIGHT & ASSOCIATES
615 CONGRESS ST SUITE 15
PO BOX 4077
PORTLAND ME 04101

STATE OF MAINE
YORK, ss.

SUPERIOR COURT
Civil Action
Docket No. CV-15-0296

FRANCINE KELLY and
WAYNE J. KELLY,

Plaintiffs,

v.

SPRUCE BEND LLC,

WORLD KITCHEN, LLC d/b/a
CORNING CONSUMER PRODUCTS
COMPANY,

and

KITTERY PLACE, LLC,

Defendants.

**ORDER DENYING DEFENDANT
WORLD KITCHEN, LLC's
MOTION TO REMOVE DEFAULT**

Before the court is Defendant World Kitchen, LLC's revised motion to remove default and enlarge time within which to answer. Based on the affidavits submitted in support of and opposition to the motion and for the reasons set out below, the motion is denied.

Plaintiffs bring this action to recover damages for injuries arising out of Francine Kelly's fall on September 10, 2012 while shopping at the Corningware, Corelle & More store in Kittery, Maine. The complaint, filed on December 30, 2015, named as defendants Spruce Bend, LLC, the owner of the property at 336 U.S. Route 1 in Kittery, and World Kitchen, LLC d/b/a Corning Consumer Products Company ("World Kitchen") and owner of Corningware, Corelle & More. World Kitchen's registered agent, CT Corporation, accepted service on or about March 15, 2016.

1

One week later, World Kitchen's Senior Legal Analyst, Celeste E. Levindoski, contacted Plaintiffs' attorney, Thomas Elias, Esq. Subsequently, on March 29, 2016 Ms. Levindoski emailed Plaintiffs' counsel to confirm that he had "granted World Kitchen a 60 day extension in which to file their answer." Pl.'s Opp. To Def.'s Mot. to Remove Default and File Answ. Late, Ex. D. World Kitchen did not file an answer within the extended 60-day period (which ended on or about May 29th).

On June 15, 2016, Plaintiffs filed an amended complaint, which added Kittery Place, LLC as a defendant but was otherwise substantively identical to the original complaint. Kittery Place, LLC is the owner and operator of the shopping mall (under a long-term land lease from Spruce Bend, LLC) where the incident occurred. Answers to the amended complaint were due to be filed by August 5, 2016. World Kitchen did not file an answer to the amended complaint by that date.

On August 5, 2016 Plaintiffs filed a request for default against World Kitchen. The clerk entered a default pursuant to M.R. Civ. P. 55(a) on August 19, 2016.

World Kitchen filed a motion to remove the default and file a late answer. The motion was denied without prejudice for failure to comply with M.R. Civ. P 7(b)(1)(A) and 7(b)(4).

World Kitchen then filed a revised motion to remove default and file a late answer, the motion here under consideration. There was no affidavit filed in support of the revised motion. Counsel for World Kitchen stated in the body of the motion itself that there is good cause to set aside the default because:

> The delay in answering was due to inadvertence or excusable neglect of the defendant's counsel, attributed to, but not caused by the defendant World Kitchen. Defendant's counsel has for many years had a system in place to diary in advance of due dates for filing pleadings, including answers to complaints. Somehow, inexplicably, defendant's counsel did not heed the system.

2

Rev. Mot., 1-2. The motion further avers that World Kitchen has meritorious defenses to the allegations in the complaint. The motion was signed by "Charles K. Mone (JP)." Charles K. Mone, Esq., is counsel of record in this matter for World Kitchen. The initials, "JP", indicate the pleading was actually signed by Joel F. Pierce, Esq., a partner in the same firm not admitted to practice law in Maine. Attorney Pierce was subsequently admitted *pro haec vice* upon motion to represent World Kitchen in this case.

A telephonic conference was scheduled for March 24, 2017 at 9:30 am to address outstanding issues in the case, including World Kitchen's motion to remove default. Attorney Elias appeared in person. Attorney Mone and Thomas Majerison, Esq., representing World Kitchen and Spruce Bend/Kittery Place, respectively, appeared by telephone with permission. Attorney Pierce, who had intended to appear in person, called shortly before the conference to indicate that he would be 40 minutes late due to an incorrect GPS setting, which apparently had diverted him to Portland. The telephone conference line arranged by Attorney Mone's office disconnected shortly into the conference. The court terminated the conference, and rescheduled the matter to April 11, 2017.

On April 11th, Attorney Elias, Attorney Mone, and Attorney Majerison appeared. Attorney Pierce did not appear. The clerk had been informed on the preceding day that Attorney Pierce was unable to attend due to illness but that counsel still wanted the proceeding to go forward. Even though Mr. Mone is counsel for World Kitchen, he stated he was not prepared to address his motion to remove the default because the court's notice did not expressly indicate that the motion would be heard, and also because Attorney Pierce was in a better position to address the motion. At Attorney Mone's request, the court deferred action on his motion, ordered that counsel file

3

affidavits addressing the "good cause" standard in M.R. Civ. P. 55(c), and indicated it would rule on the motion based on the affidavits submitted.

On April 18, 2017, Attorney Pierce filed an affidavit in response to the court's request. The affidavit states in material part as follows:

- "The delay in answering was due to my inadvertence or excusable neglect, attributed to, but not caused by the defendant World Kitchen, LLC (¶ 1)

- "I reviewed my email communications regarding this case. I received Plaintiff's [sic] original Complaint by way of email from World Kitchen LLC on May 16, 2017 [sic]."[1] (¶ 2)

- "On that day I received approximately 144 emails in total." (¶ 3)

- "Our firm's established practice in receiving case-retention requests is as follows: (a) When my support staff member has received a copy of the retention request, any future deadlines are calendared; (b) If the support staff member is not copied on the retention request, the receiving attorney forwards the retention request with instructions to calendar future events." (¶ 4)

- "Due to my inattention I failed to forward that email to my support staff member with appropriate instructions. This allowed the deadline to answer the Complaint to pass without action." (¶ 5)

- "I did not remember independently to look into the Complaint, or to take any further action regarding the Complaint or World Kitchen's answer." (¶ 6)

---

[1] The court reads this as "May 16, *2016.*"

4

*See* Affidavit of Joel F. Pierce, dated April 14, 2017.[2]   Attorney Elias also submitted an affidavit in opposition to the motion.

Rule 55(c) authorizes the lifting of a default upon demonstration of "good cause."   M.R. Civ. P. 55(c).   "Good cause" requires a showing of a "good excuse for the untimeliness and a meritorious defense."   *Levine v. KeyBank Nat. Assoc.*, 2004 ME 131 ¶ 20, 861 A.2d 678; *Estate of Gordon*, 2004 ME 23 ¶ 19, 842 A.2d 1270; *Hanby v. Thomas Realty, Assoc.*, 617 A. 2d 562, 564 (Me. 1992).   A "good excuse" means a reasonable excuse or a reasonable explanation.   *See Levine,* 2004 ME 131, ¶¶ 20-21.

Attorney Pierce has not offered a reasonable excuse or a reasonable explanation for the failure to file a timely answer.   He acknowledged receiving a copy of the complaint on May 16, 2016 by email from his client.   As of that date, there were still 13 days remaining in which to file a timely answer to the original complaint.   It is unclear from his affidavit whether he actually saw or read the email on that same day.

Attorney Pierce states that the Levindoski email was one of 144 he received on May 16th.   While the court appreciates the high volume of emails received, this does not, without more, constitute a reasonable excuse or reasonable explanation for not opening, reading, and acting on this email by the May 29th (or August 5th) deadline. Because Attorney Pierce failed to forward the email to support staff (either on May 16th or at a later date), the deadline for filing the answer was not calendared,[3] and because

---

[2] The affidavit does not contain a standard jurat, which would attest that the affiant swears under oath that the statements therein are true based on personal knowledge or to the best of his knowledge and belief.

[3] The affidavit suggests, but does not explicitly state, that Ms. Levindoski had not copied support staff directly on her email.   Even if she had, this would not excuse the firm's failure to calendar the deadline for filing an answer or, if the deadline had been calendared, to heed the deadline.   The court infers, however, that the email had not been copied directly to support staff, in which case Attorney Pierce's inattention was the sole cause of the failure to file a timely answer.

he "did not remember independently to look into the Complaint, or to take any further action regarding the Complaint," an answer was not timely filed under M.R. Civ. P. 12(a).

This does not constitute a good excuse. *See Boit v. Brookstone Co.*, 641 A.2d 864, 856 (Me. 1994) (finding no good excuse for late response where complaint had been transmitted from registered agent to corporate clerk to client's mail room, where it was temporarily misplaced); *Interstate Food Processing Corp. v. Pellerito Foods, Inc.*, 622 A.2d 1189, 1193 (Me. 1993) (finding no good excuse for untimely filing where out-of-state counsel mistakenly believed extension had been given and failed to secure local counsel). Because World Kitchen has not demonstrated a good excuse for its failure to answer timely, it has failed to satisfy Rule 55(c)'s "good cause" standard and the court need not address whether there are meritorious defenses to the complaint. *See Interstate Food*, 622 A.2d 1193.

Accordingly, Defendant World Kitchen, LLC's (revised) motion pursuant to Rule 55(c) to remove default and enlarge time within which to answer is DENIED. The default entered against Defendant World Kitchen, LLC on August 19, 2016 stands.

The clerk may incorporate this order by reference on the docket pursuant to M.R. Civ. P. 79(a). **SO ORDERED.**

Date: April 24, 2017

Wayne R. Douglas
Justice, Maine Superior Court

6

CV-15-296

ATTORNEY FOR PLAINTIFF:
THOMAS P ELIAS
ELIAS LAW OFFICES
28 LONG SANDS ROAD SUITE 5
YORK ME  03909

ATTORNEY FOR DEFENDANTS: SPRUCE BEND LIMITED LIABILITY
COMPANY & KITTERY PLACE LLC
THOMAS MARJERISON
NORMAN HANSON & DETROY LLC
PO BOX 4600
PORTLAND ME  04112

ATTORNEYS FOR DEFENDANT WORLD KITCHEN LLC;
JOEL PIERCE
CHARLES MONE
PIERCE DAVIS & PERRITANO LLP
10 POST OFFICE SQUARE
BOSTON MA  02109